## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Miami Division

**JOHN DOES, Nos. 1, 3, 5, 6, 7 & JANE DOE,**
**As Next Friend on Behalf of John Doe 6**

     *Plaintiffs*,

v.

                    **Case No. 18-cv-24145-KMW**

**RICHARD L. SWEARINGEN**, in
his official capacity as Commissioner
of the Florida Department of Law
Enforcement,

     *Defendant.*

_____/

## SECOND AMENDED VERIFIED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

### Introduction

1. The Florida Sex Offender Registration Law, Section 943.0435, Florida Statutes (hereinafter "FSORNA") first went into effect on October 1, 1997. At that time, it required one-time in-person registration of basic identifying information and crime facts, made available to the public through a toll-free telephone number. The United States Supreme Court upheld a very similar registration statute from Alaska in *Smith v. Doe*, 538 U.S. 84 (2003) against a claim that the impacts were punitive under the ex post facto clause.

1

2. Through multiple amendments in the 21 years since FSORNA's enactment, the Florida Legislature has drastically increased the number and weight of the burdens FSORNA imposes, transforming it into a trip-wired maze of restrictions and affirmative obligations resembling penal supervision for life, with strict liability for any violation of its provisions, a minimum mandatory six-month sentence of GPS-monitored probation and a maximum sentence of five years in prison.

3. While increasing the weight and number of burdens, the Florida Legislature also amplified FSORNA's notification provisions, leading to repeated police warnings to neighbors, repeated police presence at a registrant's home, warnings to online networking websites, warnings emailed to the public, warnings to school staff and students, and a Google-indexed online registry warning to anyone who types in the registrant's name. This aggressive notification has caused housing and employment instability, as well as stigmatization, ostracism, harassment, and vigilantism against the registrant *and* his family.

4. FSORNA is premised on the notion that convicted sex offenders categorically represent an intractably high risk of sexual reoffense. This premise is widely acknowledged now to be false: the average rate of registrant reoffense begins low – 5.3% within 3 years, compared with 68% by non-sex offenders – and declines every year thereafter without reoffense. Furthermore, an individual registrant's

actual risk of reoffense is easily ascertainable through risk assessment instruments in universal use, including in Florida. Finally, long-term studies have established that statutes like FSORNA do nothing to decrease the already-low rate of sexual reoffense. Thus, FSORNA, based on the false belief that it would mitigate an egregiously inflated risk of reoffense, is irrational, as evidenced by the facts of Plaintiffs' complaint.

5. Plaintiffs are six registrants, six whose offenses were committed before the first version of FSORNA was enacted in October 1997.  They have all completed their sentences, including probation. They have not since been arrested or convicted of any substantive offense, let alone a sexual offense, and all represent virtually no risk of sexual reoffense. They seek to be free from (1) the ever-increasing punitive impacts of a statute and amendments enacted after their offense dates, (2) arbitrary and unreasonable deprivations of their liberties, (3) the irrebuttable presumption that they represent grave danger to the public for at least 25 years, and (4) minimum-mandatory GPS-monitoring for strict liability violations of a vague statute. They bring this action for declaratory relief and seek to enjoin enforcement of FSORNA against them.

**Jurisdiction and Venue**

6. This action arises under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

7. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

8. Supplemental jurisdiction over the state law claim is authorized by 28 U.S.C. § 1367.

9. Venue properly lies within this District under 28 U.S.C. § 1391(b)(2), because John Does 3, 5, 6 and 7 reside in this district, and the events giving rise to their claims have occurred here.

## Parties

10.    John Doe 1, 44 years old, is subject to lifetime registration requirements because of a qualifying offense occurring in 1989-1990 against his sister, who has long since forgiven him, when both were minors in a household wracked by abuse and neglect. He received a withhold of adjudication[1], several weekends in jail and was sentenced to ten years' probation, terminated after five years. He has committed no offense in the twenty-five years since then. His computer consulting

---

[1] Florida law permits a criminal court judge to withhold adjudication of guilty only **"[i]f it appears to the court upon a hearing of the matter that the defendant is not likely again to engage in a criminal course of conduct** and that the ends of justice and the welfare of society do not require that the defendant presently suffer the penalty imposed by law." § 948.01(2), Fla. Stat. (2018) (emphases supplied). A person for whom adjudication is withheld is not considered to have been "convicted" of the offense for most purposes. However, he must still comply with the registry requirements.

business has been damaged by aggressive notification of his status, and by time-consuming in-person reports multiple times a year. His parents have been harassed and threatened because of his status. He and his wife have been shunned and shamed. He is a "sexual offender" as defined by § 943.0435(1)(h), Fla. Stat. (2018).

11.    John Doe 3, 75 years old, committed his qualifying offense, one-time fondling of a 14-year-old in a swimming pool, in 1994. He has never since committed any offense, and poses virtually no risk of sexual reoffense. Having earned Masters and Doctoral degrees from Harvard University, he was a university professor with a solid record of publications. Aggressive notification of his status ended his teaching career and caused his publisher to discontinue his books. He is a "sexual offender" as defined by § 943.0435(1)(h), Fla. Stat. (2018).

12.    John Doe 5, 72 years old, committed his qualifying offense, passive viewing of child pornography, in 1994, resulting in two years in prison followed by one year of supervised release. He has never been accused or found guilty of inappropriate contact with a child, physical or online, has never since committed any offense, and poses virtually no risk of sexual reoffense. An electronics engineer, he worked for the federal government during some of our worst national emergencies. His wife is a hospital president who lives in fear that her husband's

status will hurt her career. He is a "sexual offender" as defined § 943.0435(1)(h), Fla. Stat. (2018).

13.     Jane Doe is Next Friend on behalf of John Doe 6, the real party in interest. John Doe 6, 45 years old, is subject to lifetime registration based on a 1996 crime that was not a qualifying offense under FSORNA's first version: attempted kidnapping of a 16-year-old with sexual intent. He has not since been arrested for a substantive offense, consistent with forensic testing reflecting virtually no risk of reoffense. But he has been arrested, convicted and punished for inadvertent probation and registration violations. Mr. Doe suffers from intellectual deficits (ID), with an IQ between 53 and 65. He is illiterate, with the memory and verbal processing abilities of a small child. He was formally determined to be incompetent for trial by Miami-Dade Circuit Court Judge Milton Hirsch on January 8, 2016,[2] in vacating a plea to failure to register. Due to his severe intellectual deficits, John Doe 6 lacks the mental competency to appear on his own behalf and proceed with this litigation. John Doe 6 has never been and will never be able to register without supervision. He therefore remains at significant risk of arrest and conviction for unknowing violations. His wife also suffers from

---

[2] In view of this Court's Order granting anonymity to Plaintiffs, the Circuit Court case number and style of Doe 6's case are omitted from the First Amended Verified Complaint but will be made available to Defendant during discovery and to the Court under seal.

ID. Because of his status, they are ineligible for federally-funded housing and cannot reside in an assisted living facility. He is a "sexual offender" as defined by § 943.0435(1)(h), Florida Statutes.

14.     Next Friend Jane Doe, 56 years of age, is the older sister of Doe 6. She is thoroughly knowledgeable of her brother's cognitive deficits, having personally witnessed them since his early childhood until the present day, as they have lived together in a shared family residence for most of their adult lives. Jane Doe is fully aware of the overwhelming difficulties her brother faces in attempting to meet the ever-increasing reporting obligations imposed on him by FSORNA. By necessity and based on genuine, deep sibling love, Jane Doe has always been very protective of and dedicated to her brother's welfare and best interests. She understands the purpose of this litigation and believes it is in John Doe 6's best interest to be a real party of interest.

15.     John Doe 7, 52 years old, committed his qualifying offense, nonconsensual sexual intercourse with an adult woman, in 1994, and served 7 ½ years in prison. He has not since committed nor been arrested for any other offense and demonstrably poses virtually no risk of sexual reoffense. He is now a software engineer, with a wife and an 11-year-old child. Although the victim of his qualifying offense was an adult, FSORNA subjects him and his family to a range of adverse impacts intended for persons whose victims were children, such as

being barred from Disneyworld or entry without escort to his own daughter's school. In addition, he has been forced to curtail both work- and family-related travel. This is due to the burden under the 2018 amendment of making multiple in-person reports within 48 hours of departure or return for as few as three days away, whether or not the Sheriff's Office is even open during these intervals. Furthermore, he has been unable without risking arrest to timely respond to out-of-town emergencies. And his uncertainty about the meaning of FSORNA's travel-related provisions, given 2018's mandatory-minimum sentence for even unwitting violations, has deterred him from travel. He is a "sexual offender" as defined by § 943.0435(1)(h), Florida Statutes.

16.     Defendant Richard L. Swearingen is the Commissioner (also known as the Executive Director) of the Florida Department of Law Enforcement (FDLE), which is responsible for implementing many of Florida's registration requirements. These requirements include creation and maintenance of the registry and the website containing information about the registrants; creation and maintenance of the forms specifying information that must be registered; and disclosure of the information to law enforcement agencies, commercial social networking websites, institutions of higher education and the public.  He has statutory authority to implement the relief Plaintiffs seek.  *See* Fla. Stat. § 943.03, Fla. Stat. (2018).  References to the Commissioner or the FDLE in this Complaint

are referring to this Defendant.  At all relevant times, Defendant Swearingen and

his agents acted, and continue to act, under color of state law.

## **GENERAL FACTS**

### **Historical Evolution of FSORNA**

### **1997 Version of FSORNA**

17.     Prior to 1997, Florida had no sex offender registry or notification laws.  The

Florida Legislature first enacted FSORNA in 1997. Fla. Stat. § 943.0435, Fla.

Stat. (1997).   It applied retroactively to persons whose qualifying offenses

occurred before 1997, where their sanctions were completed on or after October

1, 1997.[3]  It required persons with qualifying convictions[4] to register with their

local sheriff in person, within 48 hours after establishing permanent or temporary

residence in Florida,[5] and to provide limited identifying information: name, date

of birth, race, sex, height, weight, hair and eye color, tattoos or other identifying

---

[3] Ch. 97-299, §  8, Laws of Fla., eff. Oct. 1, 1997.

[4] 1997 Fla. Stat. §943.0435(1)(a) "Sex offender" means a person who has been. . . [c]onvicted of committing, or attempting, soliciting, or conspiring to commit, any of the criminal offenses proscribed in the following statutes in this state or analogous offenses in another jurisdiction: § 787.025, chapter 794, § 796.03, § 800.04, § 827.071, § 847.0133, § 847.0135, § 847.0145, or any similar offense committed in this state which has been redesignated from a former statute number to one of those listed in this subparagraph.

[5] 1997 Fla. Stat. § 943.0435(2) defined a temporary residence as where the sex offender abides, lodges, or resides in a place for 2 consecutive weeks or less, excluding a stay of 2 consecutive weeks or less at a different residence due to a vacation or an emergency or special circumstance that requires the sex offender to leave his or her place of permanent or temporary residence for 2 weeks or less.  1997 Fla. Stat. § 943.0435(2) defines a permanent residence if the sex offender abides, lodges, or resides in a place for more than 2 consecutive weeks.

marks, address of permanent or temporary residence, date and place of each conviction, with a brief description of the crime or crimes committed by the registrant. Under FSORNA, the FDLE was directed to provide a photograph of the registrant, and a summary of the registrant's sexual offense to the public on request. Fingerprints were also taken upon this initial registration. *See* Fla. Stat. §943.0435(2), Fla. Stat. (1997). Change to the registrant's permanent or temporary address was to be reported in person within 48 hours to the Department of Highway Safety and Motor Vehicles ("DHSMV"). Failure to comply was a third-degree felony. Public notification was accomplished through a toll-free telephone number the public could use to inquire about an individual on the registry. *See* Fla. Stat. §943.043, Fla. Stat. (1997). FDLE was required to furnish anyone who asked a photo of a registrant and a summary of publicly-available information. § 943.043(3), Fla. Stat. (1997).

### **2018 Version of FSORNA: From Regulation to Punishment**

18.     FSORNA has evolved from a useful tool for police to investigate sex crimes, and for the public to take precautions around those who had committed them, into a labyrinthine trip-wired maze of ever-increasing affirmative requirements and ever-widening notification that lasts for life, regardless of the nature of the qualifying offense, or the individual's actual or actuarial risk of reoffense.

### **Registration Requirements: From Minimal to Engulfing**

10

19.     As a result of multiple amendments since 1997,[6] registration now entails an

engulfing number of mandatory conditions: in-person reporting on an ever-

lengthening list of occasions within ever-shortening deadlines; to multiple law

enforcement agencies; of a burgeoning amount of personal information; as well

as any actual or intended changes to this information; regardless of the registrant's

qualifying offense or risk to reoffend[7]; for the rest of his life.[8] Failure to comply

with any of these requirements is a strict liability[9] third-degree felony, punishable

by a mandatory-minimum of six months GPS-monitored probation, and a

maximum of five years in prison and a $5,000 fine.[10] Conviction for failure to

register is no remote contingency: in 2012, for example, 916 registrants (out of

---

[6] FSORNA was amended in 1998, 2000, 2002, 2004, 2005, 2007, 2009, 2010, 2012, 2013, 2014, 2016, 2017, and 2018. The legislative history of these amendments does not reflect an empirical basis for any of them. Attached to this Complaint is an Appendix reflecting the changes made in each succeeding year.

[7] §§ 943.0435(4)(c), (8), (9)(a), (14)(c)4; 943.0437(1), (2), (3), Fla. Stat. (2018).

[8] § 943.0435(11), Fla. Stat. (2018) establishes lifetime registration unless the sexual offender has received a full pardon or has had a conviction set aside. After being lawfully released from confinement, supervision, or sanction, whichever is later, for at least 25 years, some registrants, based on the nature of their qualifying offenses, may petition for removal from the registry, but only if they have not been arrested for any felony or misdemeanor since release. Other registrants must remain on the registry for life. The decision to grant removal is wholly within the trial court's discretion.

[9] A registrant may invoke lack of notice as a defense for a first offense only. Fla. Stat. § 943.0435(9)(d), Fla. Stat. (2018).

[10] § 943.0435(9)(a) & (14)(c)(4), Fla. Stat. (2018). For a second offense, the mandatory-minimum sentence is one year of GPS-monitored probation; for a third, two years of GPS-monitored probation. § 943.0435(9)(b), Fla. Stat. (2018).

23,813 living in a Florida community) were convicted of registration violations, 83% of whom were sentenced to prison or jail.[11]

20.     **Duration.** FSORNA 1997, which required only one-time in-person registration, was silent as to duration. FSORNA 1998 specified life-time registration, but with eligibility for removal twenty years after release from prison, providing no arrests in the interim.[12] FSORNA 2018 bars large categories of registrants from ever seeking removal,[13] postpones the count-down for eligibility from prison release to release from all supervision,[14] and extends the wait for eligibility from 20 to 25 years.[15] FSORNA 2018 also expands the conditions for removal beyond the no-arrest provision, requiring compliance with various federal laws and standards, a judicial determination that the registrant is not a threat, and three weeks' notice to the State so it can present opposing evidence.[16]

---

[11] Office of Program Policy Analysis & Government Accountability (hereinafter "OPPAGA") Report No. 12-12, pp. 4-5.

[12] § 943.0435(11), Fla. Stat. (1998).

[13] § 943.0435(11)(a)1.(a.-i.), Fla. Stat. (2018).

[14] § 943.0435(11)(a), Fla. Stat. (2018).

[15] § 943.0435(11)(a)1., Fla. Stat. (2018).

[16] § 943.0435(11)(a)3., Fla. Stat. (2018).

21.     **Number of qualifying offenses.** The 1997 version of FSORNA had eight

qualifying offenses. § 943.0435(1)(a)1., Fla. Stat. (1997). The 2018 version has

twenty qualifying offenses,[17] vastly increasing the numbers of people required to

register. The legislative history does not explain the reason for this vast expansion

of qualifying offenses. Because the registration statute now applies to twenty

offenses, is fully retroactive, and applies for life, as of June 2018, the number of

persons on the registry, who reside in Florida and have completed all aspects of

their sentence, including post-incarceration supervision, was 24,970.[18]

22.     **Re-Registration**. The 1997 version of FSORNA required one in-person

registration report, within 48 hours of release from prison, at the sheriff's office.

There was no re-registration requirement. FSORNA 2018 requires re-registration

in-person semi-annually or quarterly, at the sheriff's office, whether or not there

have been any changes to report in the interim. § 943.0435(14)(a), (b), Fla. Stat.

(2018).

23.     **Volume of information disclosed at registration.** The 1997 version of

FSORNA required disclosure of a limited amount of identifying information –

name, date of birth, race and sex, height and weight, hair and eye color, tattoos,

---

[17] *See* §§ 943.0435(1)(h)1.a.(I), b., c., d.(I-V), Fla. Stat. (2018).

[18] OPPAGA analysis of FDLE Sexual Offender/Predator Registry, June 2018.

temporary or permanent address, date and place of conviction, brief description of offense, photograph and fingerprints. § 943.0435(2), Fla. Stat. (1997).

24.     FSORNA 2018 requires vastly more information to be disclosed: employment, identifying information for all vehicles[19] and vessels,[20] telephone numbers, email addresses, Internet usernames, status[21] at institutions of higher learning,[22] professional licenses, immigration status, passport, palm prints, genetic markers. § 943.0435(2)(b), Fla. Stat. (2018). Expanding the information required to be disclosed at initial registration may not itself be viewed as terribly onerous. But because FSORNA 2018 requires prompt in-person reporting of **any changes** to information disclosed at registration, § 943.0435(2)(a)2., Fla. Stat. (2018), requiring additional information at initial registration multiplies the number of in-person reporting requirements.

25.     **Possession or potential access to vehicles.** The 1997 version did not require disclosure of even the registrant's own vehicle. FSORNA 2018 requires not only

---

[19] "[M]ake model, color, vehicle identification number (Vin), and license tag number of all vehicles. . ." § 943.0435(2)(b), Fla. Stat. (2018).

[20] "[V]essel, live-aboard vessel or houseboat residence identifiers (hull identification number, registration number, manufacturer's serial number, name of vessel, and physical description. . ." *Id.*

[21] Enrollment (whether in a traditional classroom setting or online), employment (whether paid or volunteer). § 775.21(2)(a), Fla. Stat. (2018).

[22] "[A] career center, a community college, a college, a state university, or an independent postsecondary institution." § 775.21(2)(i), Fla. Stat. (2018).

this, § 943.9435(2)(b), Fla. Stat. (2018), but in-person disclosure of any vehicles leased, rented, borrowed or otherwise possessed by the registrant **and any co-inhabitant,** including those of his spouse and kids, and those of their friends and family members.[23] He must also report in-person the presence of any vehicles **parked at his home for 5 days** or more, even if he resides in a multi-unit dwelling and has no means of access to those vehicles. § 943.0435(2)(b)3., Fla. Stat. (2018). This means he must count the number of days every vehicle is parked at his home, so he can report it if it stays there 5 days or more.

26.     **Branded driver's license or other State identification.** FSORNA 1997 did not require a registrant to obtain a driver's license or other state-issued identification. FSORNA 2018 requires every registrant to obtain and to pay the associated costs for a driver's license or other state-issued identification, to report any changes to DSHMV, and to report to the sheriff when a driver's license or state identification is subject to renewal. § 943.0435(2)(b)3, Fla. Stat. (2018). Furthermore, his driver's license or other state identification must now display his status as a sex offender. § 322.41(3), Fla. Stat. (2018). Because a driver's license

---

[23] § 943.0435(2)(b)3., Fla. Stat. (2018). "Vehicles owned" is very broadly defined as any motor vehicle "which is registered, coregistered, leased, titled or rented" by a sexual offender; "a rented vehicle" that a sexual offender "is authorized to drive"; or a vehicle for which the offender "is insured as a driver."  It also includes any motor vehicle that "is registered, coregistered, leased, titled or rented by a person or persons residing at a sexual offender's "permanent residence for 5 or more consecutive days."  *See* §§  943.0435 (1)(h) & 775.21 (2)(p), Fla. Stat. (2018).

is the document most frequently required to prove identity to the public, the registrant's public identity is fused with his status in even the most pedestrian transactions.

27.   **Restrictions on internet use.** FSORNA1997 imposed no restriction on a registrant's use of the Internet. FSORNA 2018 requires all registrants to report online within 48 hours their use of any Internet identifier or username in connection with person-to-person online interactions, excepting commercial and political speech. § 943.0435(4)(e)1., Fla. Stat. (2018). Registrants must also report online within 48 hours of changing or adding an email address. *Id*.

28.   **In-person report of changes to identifying information**. The 1997 version required in-person reporting to the DHSMV within 48 hours of changing a temporary or permanent address. § 943.0435, Fla. Stat. (2018).

29.   In contrast, FSORNA 2018 requires in-person reporting within 48 hours to the sheriff and/or the DHSMV of any change to almost every item in the mountain of information divulged upon initial registration: a new tattoo (or removal of an old one); change of weight or hair color; a new or additional job, a new professional license, a change in status at an institution of higher education,[24] a

_____

[24] This includes commencement or termination of enrollment (even for online classes), a change in location of enrollment, a change in employment, paid or volunteer. § 775.21(2)(a), Fla. Stat. (2018).

new or newly-colored car or boat, known future temporary residences, return from temporary residences, etc. § 943.0435(2)(a)2, (4)(a), Fla. Stat. (2018). As noted, registrants expend considerable time and energy making multiple in-person reports of trivial changes to inessential information, even though the changes must be re-reported at re-registration. Notably, each county has only one sheriff's office. Because many Florida counties are vast and sprawling, many registrants live and work at great distances from the county's only sheriff's office. Furthermore, the sheriff's offices are not necessarily open to registrants every day during business hours, but instead for fewer days and fewer hours, making it even more challenging to meet the 48-hour in-person reporting requirement. Therefore, the burden of in-person reporting multiple times a year is heavy.

30.     **Transient Registration**. The 1997 version of FSORNA had no reporting requirement for "transient" registrants. Since then, proliferating and overlapping state, county and local sex offender residence restrictions, in combination with the stigmatizing impact of aggressive notification, have created a crisis of homelessness among registrants, with thousands sleeping outside in notorious encampments throughout the state. FSORNA 2018 requires homeless registrants to report their "transient residence" [25] in-person every thirty days, §

---

[25] The term includes places without a street address. *See* §§ 943.0435(1)(f) & 775.21(2)(o), Fla. Stat. (2018).

943.0435(4)(b)2., (d), Fla. Stat. (2018), in addition to the semi-annual or quarterly in-person re-registration requirement, and the requirement to report any changes to the volume of information divulged upon initial registration.

31.     **Temporary residence**. FSORNA 1997 defined a "permanent" residence as a place the registrant lives for **two consecutive weeks** or more, and a "temporary" residence as a place the registrant stays for two consecutive weeks or less. § 943.0435(2), Fla. Stat. (1997). It expressly exempted from the reporting requirement a stay of two weeks or less made for the purpose of vacation, hospitalization, emergency or other special circumstance. *Id*.

32.     In contrast, FSORNA 2018 defines a "permanent" residence as a place the registrant lives for more than three days, and a "temporary" residence as a place the registrant stays for **three days or more in the aggregate** in any calendar year, expressly including vacation, business or personal travel, in or out of state, and not excluding emergencies. §§ 943.0435(1)(f) & 775.21(2)(n), Fla. Stat. (2018). The implications of this definition for the registrant's ability to travel are explored next.

33.     **Travel**. FSORNA 1997 did not regulate travel, except to report a new temporary or permanent residence. § 943.0435, Fla. Stat. (1997). FSORNA 2018 strictly regulates, thereby heavily burdening, intra-state, inter-state, and international travel.

34.     **International Travel**. Under FSORNA 2018, the registrant must report in-person to the sheriff 21 days before leaving the country, to register all details of his itinerary, modes of travel and destinations. § 943.0435(7), Fla. Stat. (2018). He must report to the DHSMV within 48 hours of his return. § 945.0435(4)(a) Fla. Stat. (2018). He may also have to report his return to the sheriff, if "unable" to "update" this change of residence at the DHSMV, with proof to the sheriff that he had gone to the DHSMV first.[26] If he changes his mind about leaving, he must report his change of mind within 48 hours. Failure to register his change of mind is a second-degree felony. § 943.0435(8), Fla. Stat. (2018). If he had the intent to take this trip at the time of his last registration, he must report it then as well. § 943.0435(2)(b), Fla. Stat. (2018).

35.     **Out-of-state Travel.** Under FSORNA 2018, the registrant must report in-person to the sheriff within 48 hours of leaving the state and disclose the details of his destination. § 943.0435(7), Fla. Stat. (2018). He must report to the DHSMV within 48 hours of his return, and possibly also to the sheriff, if "unable" to "update" this change of residence at the DHSMV, with proof to the sheriff that he

---

[26] This section provides that, "within 48 hours after any change in the offender's permanent, temporary, or transient residence," he "shall report in person to the" DHSMV; but that if "unable to secure or update a driver license or an identification card" at the DHSMV, he "shall also report any change" of residence within 48 hours "to the sheriff's office in the county where the offender resides or is located and provide confirmation that he or she reported such information to the" DHSMV. § 943.0435(4)(a), Fla. Stat. (2018).

had gone to the DHSMV first. §§ 943.0435(7), (4)(a), Fla. Stat. (2018). If he changes his mind about leaving, he must report his change of mind within 48 hours. Failure to report this change of mind is a second-degree felony. § 943.0435(8), Fla. Stat. (2018). If he had the intent to take this trip at the time of his last registration, he must report it then as well. § 943.0435(2)(b), Fla. Stat. (2018).

36.    **Intra-state Travel**. FSORNA 2018 requires in-person reporting to the DHSMV "within 48 hours of any temporary residential change," and also to the sheriff, if the DHSMV does not then "update" the change, with confirmation that he already made this report to the DHSMV. § 943.0435(4)(a), Fla. Stat. (2018). Because FSORNA 2018 defines "temporary" residence to be a place the registrant stays for three days or more in the aggregate per year, the registrant must register at one or both offices in-person within 48 hours of leaving home for a three-day weekend. If he had the intent to take this trip at the time of his last registration, he must report it then as well. §§ 943.0435(2)(b) & (14)(c), Fla. Stat. (2018).

37.    **Unforeseen travel emergencies.** Unlike FSORNA 1997, FSORNA 2018 has no provisions to accommodate unforeseen emergencies in the course of travel. For example, if the registrant intends to travel in-state for two days, but his car breaks down, he is guilty of effecting an unreported change to his residence without having reported it. If he travels out-of-state for a one-day medical consultation,

but is instead hospitalized for emergency surgical intervention, he is guilty of establishing a temporary residence without reporting it. If he has provided the hotel address for a temporary out-of-state residence, but the hotel is over-booked or crawling with bed bugs, he is guilty of changing his temporary residence without reporting it.

38.   **Ambiguity of Travel Restrictions.** "Temporary residence" in § 943.0435(1)(f) (incorporating the meaning provided in § 775.21(2)(n)) is defined as "a place where the person abides, lodges, or resides, including, but not limited to, vacation business or personal travel destinations in or out of this state, for a period of 3 or more days **in the aggregate** during any calendar year and which is not the person's permanent address …"

39.   First, the statute does not define "day." Is it a full 24-hour day or a specific date? If a person arrives at a hotel destination ten minutes before midnight on May 1, is May 1 the first of three days? Or does the temporary residence consist of three consecutive 24-hour intervals commencing at check-in?

40.   Second, what is a "place" or "destination[ ]"? Is it a specific address or a general location? If the latter, may a registrant travel to New York City, staying no more than two days each at several hotels through the course of a week without reporting a new "temporary residence"?

41.     Third, the statute requires in-person reporting to the DHSMV "within 48 hours of any change" in a temporary residence. § 943.0435(4)(a). Must a registrant traveling on a 6-day out of-state business trip, with 3 days in Boston and 3 in Chicago, return to Florida for in-person reporting after the 3 days in Boston and before flying to Chicago? Or does the statute require in-person reporting only after returning from Chicago?

42.     Fourth, the statute requires the registrant to make an in-person report within 48 hours of a change to residence first to DHSMV and then, if "unable to secure or update a driver license" there, to report in-person within the same 48-hour period to the sheriff's office with "confirmation that he or she reported such information to the" DSHMV first. § 943.0435(4)(a). What does it mean to "secure" or "update" a license at the DHSMV "within 48 hours of any change" in a temporary residence. Does it mean that a registrant just returning from a temporary residence must have his driver's license changed to reflect the address of the temporary residence he has just vacated?

43.     Fifth, § 943.0435(7), Fla. Stat. (2018) requires that a registrant leaving the state for a temporary residence report to the sheriff "within 48 hours before the date he or she intends to leave this state to establish [temporary] residence in another state." Does that mean the registrant must report within 48 hours before he leaves, or at least 48 hours before he leaves? If it means he must report the

change at least 48 hours before he leaves, does disclosure of the trip as a "known future temporary residence" at his previous re-registration, as required by § 943.0435(2)(a)2, Fla. Stat. (2018) suffice as the report required under § 943.0435(7), Fla. Stat. (2018)?

44.   Sixth, § 943.0435(4)(a) requires an in-person report to the DHSMV or sheriff "within 48 hours of any change" in a temporary residence. Does "within 48 hours" of leaving *from* a temporary residence mean the same thing as "within 48 hours" before leaving *for* a temporary residence, as set forth in § 943.0435(7)? For example, if "within 48 hours" before leaving means no fewer than 48 hours before leaving, does "within 48 hours" after returning also mean no fewer than 48 hours after returning?

45.   Ambiguities like these, in the context of a strict liability third degree felony statute with maximum penalty of five years in prison and a minimum-mandatory penalty of six months GPS-monitored probation, deter registrants from the exercise of their fundamental right to travel.

46.   **From *mens rea* to strict liability.** FSORNA 1997 was silent about the state of mind required for a violation of its registration requirements, a silence construed in conformity with the common law presumption that a statute with

23

criminal penalties attached requires proof of *mens rea*.[27] In contrast, FSORNA 2018 expressly dispenses with the intent requirement for any violation of the registration statute, except one: if a registrant has once been arrested or arraigned for failing to register, he may never again assert lack of knowledge. § 943.0435(9)(d), Fla. Stat. (2018). There is no exception for emergencies, nor even incapacitation.

47.     **Minimum-mandatory sentence.** FSORNA 1997 had no minimum-mandatory sentence for violations of its reporting requirements. FSORNA 2018 provides for a minimum-mandatory sentence of six months GPS-monitored probation for a first offense, one year for a second offense, and two years for a third or subsequent offense. This means that a registrant who concededly had **no knowledge or intent** to violate the statute **must** nevertheless be criminally punished for doing so. § 943.0435(9)(b), Fla. Stat. (2018).

### Public Notification: From Discreet to Aggressive

48.     **Notification.** FSORNA 1997 provided for public notice through a toll-free telephone number. Any member of the public wanting to know whether an identified individual was a registrant could call that number to find out. § 943.043, Fla. Stat. (1997).

---

[27] *Lambert v. People of California*, 355 U.S. 225, 229 (1957); *State v. Georgetti*, 868 So. 2d 512, 519 (Fla. 2004).

24

49.     FSORNA 2018 expressly endorses aggressive notification to the public: Relying on the demonstrably false premise that sex offenders "often pose a high risk of engaging in sexual" reoffense, FSORNA 2018 expressly declares that registrants have a "reduced expectation of privacy" that warrants indiscriminate notification to protect the public. § 943.0435(12), Fla. Stat. As a result, law enforcement officers are authorized to post signs or distribute flyers in the registrant's community, to go door-to-door to his neighbors' homes to warn them of his presence, even to affix a decal to his license plate.

50.     In addition, FSORNA 2018 requires local law enforcement officers to "verify the addresses" of registrants. § 943.0435(6), Fla. Stat. (2018). Law enforcement does this by dispatching contingents of uniformed police officers to registrants' homes to "verify" that they live there, regardless how long they have, in fact, lived there. If the registrant is not home, the police go to the homes of his neighbors, to ask whether they have seen him. Police officers engaged in such "notification" or "verification" are immune from civil liability for any damages in connection with these tasks. § 943.0435(10), Fla. Stat. (2018).

51.     There is also an FDLE Internet website,[28] which lists all registrants, posting their photos, qualifying offenses, addresses and other identifying information. In many states, the public must go to such a website to learn who is registered. In contrast, FDLE's registry is Google-indexed, so that people searching a registrant's name for any other purpose will see his status before seeing anything else. Indeed, because Google gives priority to data from government websites, and because private Web "crawlers" vacuum up such data for re-publication on their websites, typing a registrant's name into any large search engine immediately yields page after page of the FDLE website, announcing the registrant's status and crime, and disclosing his current photo and address, criminal history, vehicle and vessel identification, date of birth, race, sex, hair color, eye color, height, weight, and any identifying marks such as scars, marks, or tattoos.

52.     FSORNA 2018 also requires law enforcement to notify institutions of higher education that any registrant enrolled or employed, even for online classes, is a sex offender. § 944.607, Fla. Stat. (2018).  There are no restrictions on these institutions' dissemination of this information.

---

[28] *See* §943.043(1), Fla. Stat. (2018) ("The department may notify the public through the Internet of any information regarding sexual predators and sexual offenders which is not confidential and exempt from public disclosure under § 119.07(1) and §24(a), Art. I of the State Constitution.").

53.     Because the registrant is now required to register his Internet identifiers, law enforcement can follow where he goes online and what he says there. Law enforcement is authorized to notify the public that an identified username was registered by a sex offender. FDLE may also notify commercial social networking websites[29] of a registrant's e-mail addresses and internet identifiers, so that those websites may screen or disable his access.[30] Like his corporeal identity, his virtual identity is, under FSORNA 2018, inseparable from his sex offense.

54.     Under FSORNA 2018, FDLE's aggressive notification scheme communicates to the public not only that the registrant once committed a sex crime, but also sends the message that he remains at high risk of committing another one. As discussed next, this communication is false: few registrants ever reoffend, while aggressive notification inflicts extreme economic and housing instability, and crushing social isolation, on the registrant and his family.

## Empirical Evidence

## Low risk of reoffense

---

[29] This means "a commercially operated Internet website that allows users to create web pages or profiles that provide information about themselves and are available publicly or to other users and that offers a mechanism for communication with other users, such as a forum, chat room, electronic mail, or instant messenger." § 943.0437(1), Fla. Stat. (2018).

[30] § 943.0437(1), (2), (3), Fla. Stat. (2018).

55.     Contrary to popular belief, convicted sex offenders have a far lower rate of recidivism than convicted felons generally. According to studies published by the United States government, an average of 5.3% of convicted sex offenders are arrested for reoffense within three years of release from prison, compared with 68% of convicted felons generally. But even the 5.3% reoffense rate overstates the average, because it comes from a study consisting of only adult, male, violent offenders released from prison, a higher-risk group than registrants generally, many of whom committed non-violent offenses, and, like John Does 1-4 and 6, were not sentenced to prison. Even among that study's subjects, the first-time offenders' rate of reoffense was only 3.3%.

56.     A registrant's individual reoffense risk is easily ascertainable. In particular, the Static-99R, a 10-item actuarial scale that measures individual risk, can be administered within less than twenty minutes, and is more accurate than clinical assessments. It is the most widely used sex offense risk assessment tool in the world, including in Florida, which requires risk assessments to determine the right of registrants on probation to contact visitation with minors, § 948.30(e), Fla. Stat. (2018), and to identify "high-risk" registrants on community supervision. § 948.061, Fla. Stat. (2018).

57.     Whatever risk a registrant presents on release from prison, it decreases with every year the registrant remains offense-free in the community, according to

28

decades-long studies of large samples from around the world, including populations not subject to American-style registration statutes. After seventeen years offense-free in the community, even the highest-risk offenders, who comprise a small fraction of registrants generally, present virtually no risk of sexual reoffense.

58.     Registrants may be statutorily required, as a condition of probation, to undergo evaluation and intensive sex offender counseling. § 948.31, Fla. Stat. (2018). The counseling, for which the registrant must pay, *id.*, and typically lasts for years, is conducted by persons who meet rigorous statutory criteria, § 948.001, Fla. Stat. (2018), and deploy polygraph tests designed to ensure their clients are not committing unreported offenses. These measures work as intended to further reduce a registrant's already-low risk of sexual reoffense. In fact, **95% of sex crime arrests are of people who have never been convicted of a sex offense, that is, people not on the registry**.

59.     FSORNA, as originally enacted or as amended over the years, does not reduce whatever risk the registrant presents. A study conducted in Florida, comparing sexual reoffense rates in the eight years before and the eight years after FSORNA's original passage, found no statistically significant difference in those rates. These results are consistent with studies conducted in other states. These

results are unsurprising: most registrants are highly unlikely to sexually reoffend, and those that do account for only a tiny percentage of sex crimes generally.

### Punitive Impacts

60.    Aggressive notification falsely stigmatizes registrants as inherently dangerous persons, leading to mass revulsion towards and rejection of them, with devastating housing, economic, civic and psychosocial effects on registrants and their families. Registrants and their partners have trouble finding and keeping jobs. Landlords, condominium and housing associations do not want them as neighbors. They and their families are shamed, shunned, bullied, and ostracized. They are victimized by scammers pretending to be law enforcement officers who threaten and extort them. Their children are not invited to play dates and birthday parties; their teachers and classmates treat them with hostility; they cannot forge social ties. Worse yet, aggressive notification has led to numerous incidents of violence in Florida: vigilantes damage and deface registrants' property, threaten, attack, torture, even murder them.[31] Registrants and their families, including school-age children, suffer disproportionately high rates of depression and

---

[31] *See e.g.*, https://twitter.com/hashtag/killyourlocalpedophile?src=hash, a social media account that sells clothing and paraphernalia bearing this hashtag and other slogans intended to incite violence against registrants.

suicidality as a result of these impacts, impeding the registrant's efforts at rehabilitation, thereby subverting FSORNA's stated purpose.

61.    A recent example of FSORNA's indiscriminately punitive impact is Amendment 4, on the state-wide ballot this past November. The amendment, which passed, proposed to restore voting rights to all convicted felons except murderers and sex offenders. As a practical matter, virtually all persons convicted of murder in Florida are in prison for life. So barring murderers from the polls is an empty gesture.

62.    In contrast, many registrants, like Plaintiffs, received brief if any prison sentences, because the prosecutor and sentencing judge reasonably determined that jail followed by probation was a proportionate penalty for those offenses, and protected the public in light of these individuals' propensity to reoffend. There is no public safety interest in barring registrants from the polls, because children do not vote, and are unlikely to be present at polling locations unattended by an adult parent or legal guardian. The proposed amendment instead reflects the boundless animus inspired by FSORNA's false message that registrants are inherently dangerous persons to be quarantined from the herd.

### Burdens of Registration Statute on Plaintiffs

63.    **John Doe 1**. Doe 1, a victim of childhood abuse himself, committed his qualifying offense against his sister in 1989-1990 when both were minors. She is

now a happily married mother who works as a nurse. She has long since forgiven Doe 1; her husband and children love him. He has never committed another offense.

64.     Five years after committing that offense, Doe 1 earned a Bachelor of Science degree, graduating at the top of his class. He became a computer engineer, starting a computer business in 1995, just before graduation and two years before FSORNA was originally passed.  As notification became more aggressive, his customer base dwindled and his business failed. Now, he largely does consulting work, setting up computer systems for various companies. He loses accounts when customers learn about his status, sometimes even in the middle of a project, sometimes without being paid for the work that he has done.

65.     Doe 1 has to report in person an average of eight times per year, for re-registration and changes to information, *e.g.*, for the purpose of travel. Each report, including driving time and waiting in the registration office, can take up to half a day, costing him money and inconveniencing his customers. He was almost arrested once, after the amendment requiring branding of his driver's license. The FDLE notice of the amendment made it appear to apply only to those released after its enactment. When he next went to register, two police officers threatened to arrest him for not having his license branded. They backed down

only after he showed them the ambiguous language in FDLE's notice. Doe 1 lives with pervasive dread of arrest for inadvertent failure to register.

66.    As a result of his status, Doe 1 and his parents have received obscene letters at their home. His first wife was denied a job when the prospective employer learned of his status, co-workers at her part-time job harassed her about it, and landlords refused to rent to the couple, forcing them to move into the upper floor of his office. These stresses led to the dissolution of their marriage.

67.    Doe 1 is now remarried. His second wife has chosen to keep her own name, to safeguard her employment. Although her employer prefers that she use a company car for business trips around the state, she does not: Doe 1 would be required to register it, potentially exposing her husband's status to her employer, and jeopardizing her employment.

68.    Doe 1 and his wife had originally determined not to have children until, if ever, he was removed from the registry; they did not want their children to suffer from his stigma. But Doe 1's wife became pregnant. After 32 weeks, their baby girl stopped moving. Fearing that a large hospital would be more likely to bar Doe 1, they selected a small hospital in a different county for a check-up. Their baby had died. The doctors had to induce her delivery. Doe 1 spent three days and two nights in the hospital by his wife's side. He was afraid that staying a third night might require an in-person report, which takes half a day when he's in his home

county, and would now take longer. His wife could not endure her grief and pain without him.  So she checked out of the hospital on the third day, against medical advice. Having come so close to having a child – they had just put the finishing touches on the nursery – they are determined to try again. Even so, they fear their children will suffer the social isolation and suicidality reported in studies about the collateral impacts of registration.

69.     Indeed, Doe 1's siblings try to protect their own children from his stigma. When Doe 1 was looking to buy a new home, his brother furtively directed the real estate agent not to show listings in his son's school district. Doe 1's brother feared that, because they share the same (unusual) last name, the boy would be bullied and shunned once the neighborhood was notified of his uncle's status.

70.     Each new restriction on Doe 1's liberty creates fresh stress on his marriage. He and his wife used to enjoy taking long weekends together, camping, hiking, kayaking, visiting friends and family elsewhere in the state. But the 2018 FSORNA revision can be read to require him to register in person within 48 hours of leaving and returning from as little as 3 days away in the aggregate per year. He cannot be certain of this, as the provisions are vague and ambiguous. Because in-person registration costs so much in time and money, because he is not certain of the registration requirements for three-day trips, but is strictly liable for making a mistake, he and his wife are constrained from taking such trips at all.

71.    Doe 1 has now been on the registry more than half his life. He had two years of court-ordered sex offender counseling, several voice-stress analysis tests and at least one polygraph, after which he was released from court-ordered therapy. He was a minor when the offense was committed and has lived offense-free ever since, leaving him at virtually no risk of reoffense. FSORNA, with its uncertain but ever-increasing burdens and restraints, casts a long black shadow over his future. He has been diagnosed with depression, and both he and his wife have contemplated suicide in whole or large part because of his status.

72.    **John Doe 3**. At the time of his offense, a one-time fondling encounter with a fourteen-year-old in a swimming pool, John Doe 3 was married with four children; his marriage dissolved the following year, but he remained an attentive and supportive father. He remarried in 1997, to a widow with two children of her own. The judge supervising John Doe 3's probation permitted the children, then adolescents, to reside in his home with their mother. He is close to all six offspring and their children, who frequently come to stay with him and his wife. He is an elder in his church, actively ministering for many years to congregants most in need.  He also participates in his wife's religious activities.

73.    John Doe 3 earned his Masters and Doctorate of Philosophy degrees in Spanish, Portuese and linguistics from Harvard University. He began teaching in 1970, with professorships at the University of Virginia, State University of New

35

York at Albany, and Florida International University, as well as various visiting appointments. But aggressive notification warning students of his status resulted in his taking early retirement in 2010 and ending his teaching career.

74.     In addition to a career in teaching, John Doe 3 previously authored academic books, published by a prestigious house and widely sold. But aggressive notification led consumers of his series of textbooks and videos to complain to his publisher, which responded in 2009 by removing the series from the market, depriving John Doe 3 and his co-authors of royalty payments, and the public of a valuable resource. Expecting to be shunned by other publishers, he ended his academic writing career.

75.     In retirement, John Doe 3 serves as a professional translator and interpreter, previously taking assignments throughout the United States, Latin America and Europe. But in 2013, he was refused admission to Mexico, due to his status, and detained until the next flight out, ultimately losing a client for whom he had worked since 1989. In addition to Mexico, he has since missed out on work in South Africa, the Dominican Republic, Colombia and Panama, because these governments either informed him that he would be refused entry or failed to respond to questions about whether he could enter.  Thus, his geographical reach has been severely limited, along with his ability to earn a living.

76.     John Doe 3's wife is from Brazil. In addition to his U.S. citizenship, he has

permanent residence status in Brazil, where he and his wife own a second home.

He now fears non-admission to his wife's native country in spite of his residency

there. When he returns to the United States from Brazil, he invariably faces

protracted and humiliating scrutiny, because of his status. John Doe 3 and his wife

were recently booked for a cruise with Royal Caribbean, but the line cancelled his

reservation upon learning of his status. He now has to turn down a lucrative

interpreting assignment on the same line. Disney World barred him from entry

the last time he and his wife tried to use their annual pass, serving notice that a

repeat visit would subject him to arrest for trespassing. John Doe 3 used to work

as an interpreter for the Disney Institute, but is now barred from doing so, or even

from staying at a Disney-owned hotel.

77.     John Doe 3 must register in-person twice a year, as well as before and after

travel, resulting in an average of twelve in-person registrations per year, each

requiring a forty-mile-round-trip drive to the sheriff's office. He has had eggs

thrown against his home and cars; and neighborhood kids have called him "raper."

The ever-increasing impacts of notification and registration are straining Doe 3's

marriage and contributing to his depression.

78.     **John Doe 5.** John Doe 5 is an electronics engineer, having worked in military

electronics for General Electric in Syracuse, and for the federal government in

Florida. In 1992, he went to work for the Federal Emergency Management Agency (FEMA) after Hurricane Andrew hit South Florida. It was during the stressful aftermath of this storm that he committed his offense: passive viewing of child pornography. On completing his two-year prison sentence, he established an electronics service company, maintaining and installing systems for individual and business customers throughout South Florida. He is now semi-retired but continues to assist several large commercial clients in South Florida.

79.     John Doe 5 has been with his wife for nearly thirty years, married twenty. She was a registered nurse in South Florida, then obtained her MBA, eventually becoming a hospital president there. She later became a hospital president in the Northeast, where Doe 5 would commute 10-12 times a year from their home in South Florida for visits of a week or more. The state where his wife worked classified him as a Tier One offender (lowest risk), which required him to register there only once a year by mail and did not place him on its online registry. This year his wife transferred to the Southwest, where she is president of two hospitals and CEO of three separate urgent care facilities. His registration in Florida nearly cost the couple their home there. He will commute there from South Florida for visits as he did when his wife was in the Northeast.

80.     John Doe 5 is required to register in-person twice a year, as well as 48 hours before and after every visit to his wife, for an average of twenty-two times a year.

Until a year ago, the drive to and from the registration office from his home was 100 miles, taking three hours, with up to 45 minutes wait time, sometimes only to be told to return in a couple of hours or the next day. After Hurricane Irma struck, damaging the jail where he previously reported, he was required to report to a different jail. Given the heavy road damage and erratic Internet connection, registration took even longer. He now registers at a third jail, with a round-trip time of two hours, and waits sometimes for more than an hour outside in the scorching sun.

81.     In addition to the rigors of registration, John Doe 5 endures aggressive notification and intrusive verification. Multiple armed uniformed officers troop to his condominium twice a year to verify his residence. If he is not at home when they arrive, they go door to door to his neighbors, asking whether they have seen him. He is shamed by these visits.

82.     John Doe 5's wife has also suffered from his status. When she lived and worked in South Florida, a local newspaper reported online that she was married to a sex offender. When she moved to the Northeast, a member of the hospital board who had read that article tried, but failed, to oust her. The couple has paid thousands of dollars to render the article less accessible, but it remains online. She lives with the pervasive dread that the article will catch up to her at work. A few years ago, the couple traveled overnight to Nova Scotia. Upon return, customs

officials detained and interrogated John Doe 5 for three hours, a grueling experience given his age and poor health. Now 72 years old, he has worn a dual-chamber pacemaker for the past two decades, suffers from atrial fibrillation, and was hospitalized and heart-shocked three times last year. The ever-increasing burdens of the registration statute are imperiling his already deteriorating health.

83.     **John Doe 6**. John Doe 6 suffers from Intellectual Deficits (ID): he was diagnosed in early childhood, has an IQ between 53 and 65, and low adaptive skills.[32] Because of the severity of his deficits, John Doe 6 is illiterate, despite good attendance in special education classes through the age of twenty. Mr. Doe's most profound deficits are in memory and verbal processing. Because he cannot read or write, and cannot remember or process what he is told, he cannot register without someone else knowing the requirements and closely supervising his compliance. He has been arrested twice for failure to register because his mother, who used to oversee his registration obligations but recently passed away, did not understand FSORNA's requirements. The second time, in 2012, he entered a plea and was sentenced to supervision, violating technical conditions twice because of his impairments, and spending many months in jail as a result. This plea was later

---

[32] § 393.064(21), Fla. Stat.

vacated, upon the Court's determination that John Doe 6's intellectual deficits rendered him irremediably incompetent to enter a plea.

84.   Unbeknownst to his then-counsel, who failed to investigate his client's background, Mr. Doe's cognitive deficits rendered him incompetent to enter his 1997 plea to attempted kidnapping of a 16-year-old[33], which later became a qualifying offense. His participation was minor compared to that of his co-defendant, who, having grabbed the victim and tried to force her into a car, pled to a misdemeanor. Mr. Doe's deficits led to his violating probation, *e.g.*, by failing to graduate from a vocational school.

85.   Mr. Doe's wife also has ID. They reside with John Doe 6's sister, Next Friend Jane Doe, who has grown children of her own. If she overlooks or fails to understand his registration requirements, Mr. Doe is vulnerable to arrest, conviction and punishment for her unwitting failures, and for involuntary violations of probation conditions with which he cannot independently comply. Furthermore, he and his wife will eventually require living assistance. But because of his status, they will not be able to move into an assisted living facility or federally-funded housing.

---

[33] Mr. Doe's belated motion to vacate the 1997 plea on this basis was recently denied in a ruling that has been appealed to the Third District Court of Appeal.

86.     Despite John Doe 6's severe and irremediable cognitive deficits, he receives no disability insurance, and is employed full-time by his father-in-law's fencing business, to perform menial tasks under careful supervision. Prior to employment by his father-in-law, John Doe 6 had difficulty finding menial jobs, because of his status, and his record of arrests for violating the registration statute. Mr. Doe must register in-person at least four times a year. He is now 46 years old. A highly experienced forensic psychologist who examined him comprehensively five years ago determined that he represents little-to-no risk of reoffense. But because of FSORNA, he will be vulnerable for the rest of his life for someone else's inadvertent failures to ensure his compliance with the ever-increasing and vague requirements of registration. FSORNA now mandates GPS-monitored probation as the minimum sentence for failure to register. Mr. Doe 6 previously violated probation and community control because he could not remember or understand the requirements and equipment of GPS-monitoring. Maintaining Mr. Doe on the registry virtually insures his future incarceration.

87.     **John Doe 7.** Plaintiff John Doe 7 is subject to the lifetime registration requirements because of a qualifying offense against an adult that occurred 25 years ago. He served 7 ½ years in prison, with no probation, and was released 17 years ago. He has neither committed nor been arrested for any offense since then. He demonstrably poses virtually no risk of reoffense.

42

88.    Doe 7, a 52-year-old software engineer, has been married for 12 1/2 years. He and his wife have a daughter who is now 11 years old. His wife is employed as a paralegal at an immigration law firm. Their daughter attends public school and is now in the 5th grade.

89.    Although the victim of his qualifying offense was an adult, the fact that he is on Florida's registry has subjected him, his wife and his child to restrictions that appear to be intended to reduce reoffense by registrants convicted of qualifying offenses against children. For example, when Doe 7's daughter was three years old, she was enrolled in a preschool aftercare program. After a parent learned that Doe 7 was a registrant, the aftercare program prohibited him from coming inside to pick up his daughter. Instead, he had to park outside and wait for school staff to bring her to him.

90.    In 2012, Doe 7 visited Disneyworld with his wife and daughter. The three had been there many times before, buying yearly passes and staying at an onsite hotel. But this time, he was cited for trespass because of his status. A security guard and off-duty sheriff's deputy escorted him, his wife, and child to the hotel, where he was separated from them, and all three were detained for hours and prohibited from using a bathroom without escort—even his daughter. They were finally released and ordered not to come back.

91.    At the school his daughter presently attends, the staff requires that he be physically escorted to meet with teachers or the principal, or to attend any school functions, because of his status.

92.    Doe 7 used to travel to Mexico with his family for vacation. Now, due to prior notification of his status, he is no longer permitted entry into that country.

93.    In 2018, Doe 7 traveled with his family to Ecuador, his wife's country of origin where her family still resides. Doe 7 was detained at the border, based on notification of his status, and advised that he was listed by this country as a dangerous individual. Border patrol agents checked his luggage for weapons and explosives, then searched his cell phone and computer, holding him for a total of one-and-a-half hours, during which he was separated from his family, until allowed to proceed after intercession by his wife's brother, who is an attorney in Ecuador.

94.    Doe 7's wife has suffered the impacts of his registration. In 2008, two police detectives came to their home to verify Doe 7's residence, but he was not then at home. The detectives told his wife that if Doe 7 was not at home next time they came by, they would issue a warrant for his arrest. She is fearful every time the police come by that they will find some reason to arrest her husband. She is fearful every time they travel that he will be barred, detained or deported, breaking up the family.

95.    Doe 7 has been harassed and intimidated because of his status. For instance, while he was living at his cousin's house, a neighbor called the police and, even though the address did not violate a residence restriction, the police came to confirm his whereabouts. A person driving her car hurled a bottle through the window of his car, striking him in the head. He reported this assault to the police, but they did nothing to investigate. Another person stole money from him through a fraudulent repair scheme. He reported the fraud to the police, who again did nothing to investigate. He believes that the police inaction in response to both crimes resulted from his status as a registrant.

96.    Doe 7 is required to re-register in person at the Sheriff's Office four times a year. Last year he was required to make four additional in-person reports in connection with travel and vehicle changes, for a total of eight in-person reports that year. Transportation to and from the office takes approximately twenty minutes with an additional 20 minutes to one hour to make the in-person report once he gets there.

97.    The 2018 amendment redefining "temporary residence" from 5 days to 3 has caused Doe 7 to forego work- and family-related travel in order to save the time away from work entailed in making in-person reports. Furthermore, the 48-hour interval within which he is required to report in-person before departure and after arrival makes some travel impossible, particularly because the Sheriff's Office

may be closed for in-person reporting during these 48-hour intervals. Finally, Doe 7 is uncertain when a "day" begins for the purpose of a 3-day trip and uncertain when the 48 hours begins and ends with respect to a 3-day trip for the purpose of making an in-person report. This uncertainty chills the exercise of his right to travel.

98.     Doe 7 reasonably fears that amendments to the statute will render it still more onerous. He knows it is only a matter of time before his daughter is bullied and shunned, like other registrants' children, who suffer disproportionate depression and suicidality due to widespread notification of their parents' status.

## CLAIM I – Ex Post Facto

99.     Plaintiffs allege that, because their qualifying offenses predated FSORNA, and because FSORNA is penal in effect if not intent, its application to them violates the federal guarantee against ex post facto laws, under the multi-factor intent-effects test set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963) and applied in *Smith v. Doe*, 538 U.S. 84 (2003) to Alaska's 1994 version of a registration statute (ASORA). Resembling the first version of FSORNA, ASORA required one-time in-person registration of basic identifying information and

crime facts, with periodic re-registration by mail, and dissemination of the information through a State-sponsored website.[34]

100.    In *Smith v. Doe*, the United States Supreme Court, misreading one empirical study and citing no others[35], determined that sex offenders categorically represent a "frightening and high"[36] risk of sexual reoffense that persists for decades. Given the relatively trivial burdens of ASORA and the Court's grievous mistake about the risk of reoffense, it concluded that the punitive impacts of the statute did not outweigh its civil intent, although the case was "close." *Smith*, 538 U.S. at 109, Souter, J., *concurring in judgment.* This case is not close, for three reasons: 1) The impacts of FSORNA 2018 dwarf those at issue in *Smith*; 2) The *Smith* Court's assumption about registrants' risk of reoffense has been decisively disproved; and 3) Since *Smith,* registration statutes have been shown to have **no** impact on the reoffense rate of its generally low-risk targets. The five-factor impacts test applied by the *Smith* Court to Alaska's statute 15 years ago yields a different result as applied to FSORNA's current version. Here are the factors:

---

[34] *See Doe v. State*, 189 P.3d 999, 1000-01 (Alaska 2008).

[35] *See* I. M. Ellman and T. Ellman, "Frightening and high": The Supreme Court's crucial mistake about sex crime statistics," University of Minnesota Law School, http://hdl.handle.net/11299/188087.

[36] *Smith v. Doe*, 538 U.S. at 103, citing *McKune v. Lile*, 536 U.S. 24, 34 (2002).

101. **Penal effects historically regarded as punishment**. While ASORA's registered information was available only to those who sought out the registry online, FSORNA's notification aggressively signals to the public that the registrant will always be a menace. As a result, registrants are banished from society, along with their partners and children. This impact resembles "the shaming punishments of the colonial period meant to inflict public disgrace" or "permanent stigmas, which in effect cast the person out of the community." *Smith,* 538 U.S. at 98.

102. **Affirmative disability or restraint.** In contrast with ASORA's requirement of one in-person registration event followed by mailed-in annual updates, FSORNA requires Plaintiffs to report in person to the Sheriff's Office and Department of Highway Safety and Motor Vehicles (DHSMV) multiple times a year for trivial changes to registered information and short trips from home. By comparison, a probationer need only call his probation officer before taking a comparable trip. Finally, unlike ASORA, which had not resulted in job loss, housing instability, or vigilantism, *Smith*, 538 U.S. at 86, 100, FSORNA has.

103. **Promotes the purpose of punishment**. Although studies show no deterrent impact, FSORNA was enacted with the express **intent** to deter reoffense. FSORNA is also retributive, because it is based solely on a past crime, without regard to present risk, and imposes burdens that outpace its stated intent, giving

48

rise to "serious argument that the ulterior purpose is to revisit past crimes, not prevent future ones." *Smith*, 538 U.S. at 109, Souter, J., *concurring in judgment*.

104.    **No rational connection to non-punitive purpose**. The absence of a rational connection to a non-punitive purpose is a "most significant" factor. *Smith*, 538 U.S. at 102-03. The *Smith* Court's conclusion that ASORA was rationally connected to a non-punitive purpose derived from its erroneous assumption of a "frightening and high" risk of reoffense, to which ASORA seemed a reasonable response. *Id*. at 103. Because empirical evidence now demonstrates that registrants sexually reoffend at a very low rate that decreases every year, and that engulfing registration statutes do not reduce this rate, FSORNA does not bear a rational connection to a non-penal purpose.

105.    **Excessive in relation to non-penal purpose**. Assuming *arguendo* some conceivably rational connection to a non-penal purpose, FSORNA is grossly excessive in relation to it, by failing to distinguish among registrants, unlike other states that take individual risk into account. Given the devastating lifetime impacts of FSORNA, its blanket failure to individualize risk is excessive with respect to its objectives.

106.    Although the Florida Legislature has declared that designating someone as a sex offender "is not a sentence or a punishment," § 943.0435(12), Fla. Stat. (2018), FSORNA's severe penal effects render it a punishment under the ex post

facto clause, on its face and as applied to Plaintiffs. Striking FSORNA on its face and/or as applied to Plaintiffs would ameliorate the harm.

## CLAIM II – EIGHTH AMENDMENT: Cruel and Unusual Punishment

107.    Plaintiffs repeat and reallege all preceding paragraphs before the Claims for Relief Section, as if fully set forth herein.

108.    The Eighth Amendment's proscription against cruel and unusual punishment prohibits the State from imposing punishment that is disproportionate to the crime. Plaintiffs were already sentenced to prison and/or probation pursuant to presumptively proportionate sentencing guidelines in the Florida Criminal Code. FSORNA heaps punitive impacts on top of these sentences, producing financial and housing instability, violent vigilantism and social death. This is no accident: the purpose of the registry is to notify the public that the registrant is a dangerous person, so it can undertake measures to confine him from society through behavior forbidden the State itself by the Cruel and Unusual Punishments Clause. Although Plaintiffs completed their authorized sentences many years ago, have never since reoffended, and ascertainably represent no material risk of reoffense, they are condemned to suffer these punitive impacts until they die, in violation of the cruel and unusual punishment clause of the Eighth Amendment. Striking FSORNA on its face and/or as applied to Plaintiffs would ameliorate this harm.

## CLAIM III – 14TH AMENDMENT: Procedural Due Process

## Claim III(A) – Strict Liability for Registration Violation

109.   Plaintiffs repeat and reallege all preceding paragraphs before the Claims for Relief Section, as if fully set forth herein.

110.   Principles of procedural due process limit strict liability offenses to those where (1) the penalty available is slight; (2) the statute regulates inherently dangerous or potentially harmful conduct; and (3) a conviction does not result in a substantial stigma. FSORNA meets none of these requirements.

111.   The penalties provided for even inadvertent and unknowing violations of FSORNA, all felonies, are not slight: a minimum of six months' GPS-monitored probation, a maximum of five years in prison. The conduct regulated through registration is not inherently dangerous: it includes such conduct as traveling for a long weekend, having cars parked outside one's home, carrying an unembossed driver's license, failing to timely update some detail among a myriad of information.  FSORNA treats the registrant, rather than his conduct, as inherently dangerous, requiring extreme vigilance and blinking hazard warnings for the rest of his life. Moreover, a conviction under FSORNA amplifies the substantial stigma under which sex offenders labor in any event.

112.   Because FSORNA imposes significant punishment and stigmatization for even unwitting failure to meet multiple affirmative obligations concerning

harmless conduct, it violates procedural due process, on its face and/or as applied to Plaintiffs. This Court's determination of this issue in favor of Plaintiffs would ameliorate this constitutional injury.

### Claim III (B) – Vagueness: Travel Restrictions

113.    Plaintiffs repeat and reallege all preceding paragraphs before the Claims for Relief Section, as if fully set forth herein.

114.    A law so vague that it fails to give ordinary people fair notice of the conduct it punishes or so standardless that it invites arbitrary enforcement violates the procedural due process clause. Pre-enforcement review of a vague criminal law is appropriate where the vagueness chills constitutionally protected conduct: no one should have to choose between the Scylla of flouting the law and the Charybdis of foregoing constitutionally protected liberty interests. In particular, when vagueness permeates the text of a criminal law that 1) contains no *mens rea* requirement and 2) infringes on constitutionally protected rights, pre-enforcement review of a facial vagueness challenge is necessary.

115.    As set forth in ¶¶ 37-42, FSORNA's provisions restricting travel are hopelessly vague and ambiguous, but are enforced with strict liability and substantial criminal sanctions, chilling Plaintiffs from exercising their fundamental right to inter-state and intra-state travel. Striking these provisions now on their face and/or as applied to Plaintiffs – who have remote convictions,

have long since completed their sentences, and represent virtually no risk of sexual reoffense – would immediately ameliorate this constitutional harm.

## CLAIM IV – 14th AMENDMENT: Substantive Due Process

## Claim IV(A) – Right to Travel

116.   Plaintiffs repeat and reallege all preceding paragraphs before the Claims for Relief Section, as if fully set forth herein.

117.   Plaintiffs have a fundamental right to inter-state and intra-state travel, under the state and federal constitutions. *See* Claim III. This right, chilled by FSORNA's vague provisions, *see* ¶¶ 37-42, is also impaired by the requirement to report in-person to one or two different offices within 48 hours of leaving and/or returning from as few as three days away in the aggregate per year.

118.   Before burdening a fundamental liberty interest, the government must show that the burden is necessary to achieve a compelling public purpose. The government cannot meet this burden here: its decision to change the definition of "temporary residence" from fourteen days with exemptions for vacation and business travel, to five, then three days in the aggregate per year, without exemption, and with strict liability embodies arbitrariness. While the government's interest in protecting the public from crime is compelling, this staggering burden on a fundamental right is scarcely necessary to meet this

interest. Striking these restrictions, on their face and/or as applied to Plaintiffs, will ameliorate this harm.

## Claim IV(B) – Stigma-Plus

119.    Plaintiffs repeat and reallege all preceding paragraphs before the Claims for Relief Section, as if fully set forth herein.

120.    The substantive due process clause protects individuals from governmental actions that are arbitrary and unreasonable in impairing individual liberty. FSORNA inflicts stigma-plus, a fundamental liberty interest that the government may not impair unless necessary to serve a compelling government objective. A stigma is "[a] mark or token of infamy, disgrace, or reproach."[37] To rise to stigma-plus, it must be coupled with "more tangible interests such as employment," or altered legal status.[38]

121.    FSORNA meets that test. It stigmatizes registrants through aggressive notification, impairing their economic and housing opportunities, as well as the safety and security of their families. And it alters their legal status by subjecting them to a lifetime of mandatory punishments for a plethora of unwitting mis-steps.

---

[37] *State v. Robinson*, 873 So. 2d 1205, 1213 n.7 (Fla. 2004), quoting *American Heritage Dictionary of the English Language* 1702 (4th ed. 2000).

[38] *State v. Robinson*, 873 So. 2d at 1213, n.74, citing *Paul v. Davis*, 24 U.S. 693, 701, 708-09 (1976).

122.   Anchored in demonstrably false assumptions about recidivism and demonstrably failing in its stated purpose to protect the public, FSORNA cannot survive heightened scrutiny, on its face and/or as applied to Plaintiffs, who demonstrably represent virtually no risk of reoffense, in violation of their rights to substantive due process.

### Claim IV (C) – No Rational Relationship as Applied to Plaintiffs

123.   Plaintiffs repeat and reallege all preceding paragraphs before the Claims for Relief Section, as if fully set forth herein.

124.   In the absence of a fundamental liberty interest, substantive due process requires that a statute bear a rational relationship to a permissible legislative objective, that it not be arbitrary, capricious or oppressive.  FSORNA fails to satisfy even this indulgent standard of scrutiny, because it is anchored in false assumptions about risk, and its means fail to mitigate whatever risk there is. Even if these assumptions were themselves reasonable, which they are not, they are unreasonable as applied to Plaintiffs, who suffer FSORNA's increasingly oppressive burdens without any conceivable gain in public safety. Accordingly, there is no rational relationship between FSORNA's goals and its means, on its face and/or as applied to Plaintiffs, in violation of their rights to substantive due process.

### Claim IV (D) – Irrebuttable Presumption

55

125.    Plaintiffs repeat and reallege all preceding paragraphs before the Claims for

Relief Section, as if fully set forth herein.

126.    FSORNA does not require or even permit individualized assessments to

determine a registrant's risk of reoffense before requiring registration. Nor does

it offer registrants like Plaintiffs an opportunity to present evidence that their risk

of reoffense, consistent with scientific consensus, was low when they re-entered

the community and has diminished in every year since. Instead, FSORNA

irrebuttably presumes that those who commit qualifying offenses present a high

risk of reoffense for the rest of their lives regardless of what the registrant has

done, and not done, in the decades following that offense.

127.    The constitutionality of an irrebuttable presumption turns on the "adequacy

of the 'fit' between the classification and the policy that the classification serves."

*See Michael H. v. Gerald D.*, 491 U.S. 110, 121 (1989). The rationale for

FSORNA's irrebuttable presumption – that sex offenders reoffend at very high

rates for the rest of their lives – is rebutted by the empirical evidence. Moreover,

the presumption as applied to any individual registrant can be readily rebutted by

risk assessment instruments used in Florida in other contexts. The state can have

no legitimate interest in applying an erroneous and disabling yet irrebuttable

presumption to thousands of registrants with little risk of reoffense. There is, at

best, an inadequate "fit" between the classification and the public interest it

purports to serve, violating the substantive due process clause as applied to Plaintiffs. Striking FSORNA on its face and/or as applied to Plaintiffs would redress this constitutional harm.

## CLAIM V – State Constitutional Right to Privacy

128.  Plaintiffs repeat and reallege all preceding paragraphs before the Claims for Relief Section, as if fully set forth herein.

129.  Art. I, § 23, Fla. Const. expressly provides for a right to privacy, which includes disclosural privacy. Aggressive public dissemination through the Florida registry and community notification procedures, of a registrant's name, home address, photograph, identifying marks, place of employment, contact information, vehicles owned or parked outside his home, etc. – information to which he has a reasonable expectation of privacy – infringes on Plaintiffs' state constitutional right to disclosural privacy. Indiscriminate and public disclosure of this information has subjected Plaintiffs to harassment, ostracism, shaming, shunning, scams and violent vigilantism. Before the government can infringe on rights protected under Art. I, § 23, it must present a compelling justification and an absence of less restrictive means for doing so. Because Plaintiffs represent virtually no risk of sexual reoffense and the public disclosure of their private information does not reduce whatever risk there is, FSORNA's public notification provisions violate Art. I, § 23, on its face and as applied to Plaintiffs. Furthermore,

because the state right to privacy is enumerated, it is fundamental. Because the government cannot meet its burden to present a compelling justification for infringing upon this fundamental right, aggressive public notification also violates substantive due process, pursuant to Art I, § 9, Fla. Const., on its face and as applied to Plaintiffs. *See Doe v. State of Alaska, Department of Public Safety*, No. 7375, -- P.3d --, 2019 WL 2480282, at * 21, 22 n. 94, 24 (Alaska, June 14, 2019) (registration statute violated state's enumerated privacy provision under strict substantive due process analysis based in part on increasing harassment and violence against registrants).

## **REQUEST FOR RELIEF**

130.   WHEREFORE, Plaintiffs respectfully request that the Court:

131.   Declare Fla. Stat. § 943.0435, Fla. Stat. (2018) unconstitutional, facially and/or as applied to Plaintiffs, in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 9 and 23 of the Florida Constitution;

132.   Permanently restrain and enjoin the Defendant, including all of Defendant's officers, agents, servants, employees, attorneys, and other persons in active concert or participation with Defendant, from enforcing Fla. Stat. § 943.0435, Fla. Stat. (2018), at the very least against them;

133.    Award Plaintiffs their attorneys' fees and expenses in this action pursuant to

42 U.S.C. § 1988(b);

134.    Award Plaintiffs their costs of suit; and

135.    Grant such other and further relief as this Court deems just and proper in the

circumstances.

Respectfully submitted,

s/*Valerie Jonas*

Valerie Jonas, Esq.
Florida Bar No. 616079
valeriejonas77@gmail.com
WEITZNER AND JONAS, P.A.
40 NW 3rd Street, Suite 200
Miami, FL 33128
Phone (786) 254-7930
*Attorney for Plaintiffs*

s/*Todd G. Scher*

Todd G. Scher
Fla. Bar No. 0899641
tscher@msn.com
Law Office of Todd G. Scher, P.L.
1722 Sheridan Street #346
Hollywood, FL 33020
Tel:  754-263-2349
Fax: 754-263-4147
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed today, December 19, 2019, the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all persons registered to receive electronic notification for this case, including all opposing counsel.

By:   *Todd G. Scher*
TODD G. SCHER

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**JOHN DOES, Nos. 1, 3, 5, 6, 7 & JANE DOE,**
**As Next Friend on Behalf of John Doe 6**

      *Plaintiffs*,

v.

                                    **Case No. 18-cv-24145-KMW**

**RICHARD L. SWEARINGEN**, in
his official capacity as Commissioner
of the Florida Department of Law
Enforcement,

      *Defendant.*
_____/

**DECLARATION OF JOHN DOE 7**

    My name is John Doe 7.  I have reviewed the Second Amended Verified Complaint set forth in the above matter and I find that the facts contained therein which pertain to me to be true and accurate to the best of my knowledge and belief.

    I understand that a false statement in this declaration will subject me to penalties for perjury.

                          By:___*s/ John Doe 7*_____
                             John Doe 7

Dated:  December 19, 2019

# APPENDIX

# Timeline of Amendments to Florida Statute 943.0435

**1997:**  Florida Statute 943.0435 enacted

**943.0435  Sex offenders required to report to the department; penalty.--**

## [Qualifying Offenses]

**(1)**  As used in this section, the term:

    **(a)**  "Sex offender" means a person who has been:

        **1.**  Convicted of committing, or attempting, soliciting, or conspiring to commit, any of the criminal offenses proscribed in the following statutes in this state or analogous offenses in another jurisdiction: s. 787.025, chapter 794, s. 796.03, s. 800.04, s. 827.071, s. 847.0133, s. 847.0135, s. 847.0145, or any similar offense committed in this state which has been redesignated from a former statute number to one of those listed in this subparagraph.

        **2.**  Released on or after October 1, 1997, from the sanction imposed for any conviction of an offense described in subparagraph 1. For purposes of subparagraph 1., a sanction imposed in this state or in any other jurisdiction includes, but is not limited to, a fine, probation, community control, parole, conditional release, control release, or incarceration in a state prison, federal prison, private correctional facility, or local detention facility.

## [Definitions]

    **(b)**  "Convicted" means the person has been determined guilty as a result of a plea or a trial, regardless of whether adjudication is withheld.

## [Reporting Requirements, Personal Identification Information, Definitions]

**(2)**  A sex offender shall initially report in person at an office of the department, or at the sheriff's office in the county in which the offender permanently or temporarily resides, within 48 hours after establishing permanent or temporary residence in this state. A sex offender permanently resides in this state if the offender abides, lodges, or resides in a place for more than 2 consecutive weeks. A sex offender temporarily resides in this state if the offender abides, lodges, or resides in a place for 2 consecutive weeks or less, excluding a stay of 2 consecutive weeks or less at a different residence due to a vacation or an emergency or special circumstance that requires the sex offender to leave his or her place of permanent or temporary residence for 2 weeks or less. The sex offender shall provide his or her name, date of birth, race, sex, height, weight, hair and eye color, tattoos or other identifying marks, address of permanent or legal

residence, or address of any current temporary residence, date and place of each conviction, and a brief description of the crime or crimes committed by the offender. If a sex offender reports at the sheriff's office, the sheriff shall take a photograph and a set of fingerprints of the offender and forward the photographs and fingerprints to the department, along with the information provided by the sex offender.

## [Reporting Requirements]

**(3)** Subsequent to the initial report required under subsection (2), a sex offender shall report in person at a driver's license office of the Department of Highway Safety and Motor Vehicles within 48 hours after any change in the offender's permanent or temporary residence. At the driver's license office the sex offender shall:

> **(a)** If otherwise qualified, secure a Florida driver's license, renew a Florida driver's license, or secure an identification card. The sex offender shall identify himself or herself as a sex offender who is required to comply with this section. The sex offender shall provide any of the information specified in subsection (2), if requested. The sex offender shall submit to the taking of a photograph for use in issuing a driver's license, renewed license, or identification card, and for use by the department in maintaining current records of sex offenders.
>
> **(b)** Pay the costs assessed by the Department of Highway Safety and Motor Vehicles for issuing or renewing a driver's license or identification card as required by this section.
>
> **(c)** Provide, upon request, any additional information necessary to confirm the identity of the sex offender, including a set of fingerprints.

## [Reporting Requirements]

**(4)** Each time a sex offender's driver's license or identification card is subject to renewal, the offender shall report in person to a driver's license office, regardless of whether the offender's residence has changed, and shall be subject to the requirements specified in subsection (3). The Department of Highway Safety and Motor Vehicles shall forward to the department all photographs and information provided by sex offenders. Notwithstanding the restrictions set forth in s. 322.142, the Department of Highway Safety and Motor Vehicles is authorized to release a reproduction of a color-photograph or digital-image license to the Department of Law Enforcement for purposes of public notification of sexual offenders as provided in ss. 943.043, 943.0435, and 944.606.

**(5)** This section does not apply to a sex offender who is also a sexual predator, as defined in s. 775.21. A sexual predator must register as required under s. 775.21.

## [Penalty for Failure to Comply]

**(6)** A sex offender who does not comply with the requirements of this section commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

**[Immunity]**

**(7)**  The department, the Department of Highway Safety and Motor Vehicles, the Department of Corrections, and the personnel of those departments are immune from civil liability for damages for good faith compliance with the requirements of this section, and shall be presumed to have acted in good faith in compiling, recording, and reporting information. The presumption of good faith is not overcome if a technical or clerical error is made by the department, the Department of Highway Safety and Motor Vehicles, the Department of Corrections, or the personnel of those departments in compiling or providing information, or if information is incomplete or incorrect because a sex offender fails to report or falsely reports his or her current place of permanent or temporary residence.

History.--s. 8, ch. 97-299.

## 1998:

### Qualifying Offenses Expanded

-Fla. Stat. 943.0435(1)(a): Added s.787.01 (Kidnapping) or s.787.02 (False Imprisonment), where the victim is a minor and the defendant is not the victim's parent; 825.1025 (Lewd or lascivious offenses committed upon or in the presence of an elderly person or disabled person).

-Fla. Stat. 943.0435 (1)(b) : Expanded definition of "convicted" to include "entry of a plea of guilty or nolo contendere" and to encompass convictions of similar offenses in US Armed Forces and in any state of the United States.

### Definitions Added

-Fla. Stat. 943.0435 (1)(c): Permanent and temporary residence as in 775.21

-Added Fla. Stat. 775.21(f) "Permanent residence" means a place where the person abides, lodges, or resides for 14 or more consecutive days.

-Added Fla. Stat. 775.21 (g) "Temporary residence" means a place where the person abides, lodges, or resides for a period of 14 or more days in the aggregate during any calendar year and which is not the person's permanent address; for a person whose permanent residence is not in this state, a place where the person is employed, practices a vocation, or is enrolled as a student for any period of time in this state; or a place where

the person routinely abides, lodges, or resides for a period of 4 or more consecutive or nonconsecutive days in any month and which is not the person's permanent residence.

## Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2):  Social security number, occupation and place of employment, rural route address and a post office box, post office box cannot be used in lieu of physical residential address, written notice of vehicle identification number, license tag number, registration number, a description including color scheme, hull identification number, manufacturer's serial number, name of vessel, registration number and description including color scheme.

## Added Reporting Requirements

-Fla. Stat. 943.0435 (3): After initial report to sheriff's office required under subsection (2), registrant must report in person within 48 hours to the license office of the Department of Highway Safety Motor Vehicles ("DHSMV").

-Fla. Stat. 943.0435 (3)(a): Added that registrant shall provide proof to the DHSMV that the registrant initially reported in person to the sheriff's office as required in Paragraph (2).

-Fla. Stat. 943.0435 (4):  Registrant must report in person to a driver's license office within 48 hours after any change in registrant's permanent or temporary residence.

-Fla. Stat. 943.0435 (6): The department ("FDLE") shall verify the addresses of registrants.

-Added Fla. Stat. 943.0435 (7): A registrant who intends to move out of Florida shall notify county sheriff or department within 48 hours before registrant intends to leave.

-Added Fla. Stat. 943.0435 (8): If registrant changes mind about leaving Florida, then must notify the prior agency to whom the registrant reported to within 48 hours after the registrant would have left Florida.  Failure to comply is a second-degree felony.

-Added Fla. Stat. 943.0435 (10): Added paragraph granting immunity from civil liability.

## Public Notification Expanded via Inter-related Statutes

-Fla. Stat. 943.043: Toll-free telephone number; Internet notification; sexual predator and sexual offender information.--

(1)  The department may notify the public through the Internet of any information regarding sexual predators and sexual offenders which is not confidential and exempt from public disclosure under s. 119.07(1) and s. 24(a), Art. I of the State Constitution.

-Fla. Stat. 944.606 (d): "Upon receiving information regarding a sexual offender from the [D]epartment [of Corrections], the Department of Law Enforcement, the sheriff or the chief of police shall provide the information described in subparagraph (a)1. to any individual who requests such information and may release the information to the public in any manner deemed appropriate, unless the information so received is confidential or exempt from s.119.07(1) and s. 24(a), Art. I of the State Constitution."

### Lifetime Registration Requirement and Removal Petition Added

-Added Fla. Stat. 943.0435 (11): A registrant must maintain registration with the department for the duration of his or her life, unless the registrant has had his or her civil rights restored or has received a full pardon or has had a conviction set aside in a post-conviction proceeding for any felony sex offense that meets the criteria for classifying the person as a sexual offender for purposes of registration. However, a registrant who has been lawfully released for at least 20 years and has not been arrested for any felony or misdemeanor offense since release may petition for the purpose of removing the requirement for registration as a sexual offender.

## 2000:

### Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2): Reporting any residence within Florida or out of state.

### Added Reporting Requirements

-Fla. Stat. 943.0435 (4): Registrant must report in person to a driver's license office within 48 hours after any change in registrant's name by reason of marriage or other legal process.

### Public Notification Expanded

-Fla. Stat. 943.0435 (6): County and local law enforcement agencies shall verify the addresses of sexual offenders in a manner that is consistent with the provisions of the federal Jacob Wetterling Act, as amended, and any other federal standards applicable to such verification or required to be met as a condition for the receipt of federal funds by the state.

### Immunity Expanded

-Fla. Stat. 943.0435 (10) Added to the list of those granted civil immunity: any law enforcement agency in this state and elected or appointed official, public employee, and school administrator.

### Lifetime Registration Requirement and Removal Petition Added

-Fla. Stat. 943.0435 (11)(b): A registrant may petition for removal if he or she was 18 years of age or under at the time the offense was committed, adjudication was withheld, who has had 10 years elapse since having been placed on probation, and has not been arrested for any felony or misdemeanor offense since release.

## 2002:

### Expanded Qualifying Offenses and Persons Subject to Registration

-Fla. Stat. 943.0435 (1)(a)1: s. 847.0137 (Transmission of pornography by electronic device or equipment prohibited); s. 847.0138 (Transmission of material harmful to minors by electronic device or equipment prohibited).

-Fla. Stat. 943.0435 (1)(a)3: Persons subject to registration in another state or jurisdiction but not designated as a registrant in Florida.

-Fla. Stat. 943.0435 (1)(a)4: Anyone who is in the custody, control or supervision of any other state or jurisdiction for convictions of the offenses listed in subsection (1)(a)1.

### Definitions Added

-Fla. Stat. 943.0435 (1)(d): "'Institution of higher education' means a community college, college, state university, or independent postsecondary institution."

-Fla. Stat. 943.0435 (1)(e): "'Change in enrollment or employment status' means the commencement or termination of enrollment or employment or a change in location of enrollment or employment."

### Personal Identification Information and Reporting Requirements Expanded

-Added Fla. Stat. 943.0435 (2)(b)2: Requiring reporting in person within 48 hours after any change in enrollment or employment status, and that the registrant shall report the name, department, address, county, campus, and the registrant's enrollment or

employment status for any vocation at an institution of higher education in this state. The sheriff shall promptly notify each institution of the registrant's presence and any change in the registrant's enrollment or employment status.

### Expanded Lifetime Registration Requirement and Restrictions on Removal Petition by Juvenile Registrants

-Fla. Stat. 943.0435 (11)(b): Restricting ability to petition for removal by registrants who were minors upon conviction unless victim is 12 years of age or older.

-Added Fla. Stat. 943.0435 (11)(c): Persons subject to registration in another state, but not designated in Florida, who establish a residence (even temporary) in Florida must remain on Florida's registry for life. To be removed from the registry, the person must establish not only that his out-of-state designation has been legally removed by the other state, but that h/she no longer meets the criteria for registration as a sex offender under Florida law.

### Legislative Intent Added

-Fla. Stat. 943.0435 (12): Florida legislature finds registrants pose a high risk of recidivism and that registrants have a reduced expectation of privacy because of public interest of public safety, and releasing information on registrants to law enforcement agencies and to public upon request. "The designation of a person as a sexual offender is not a sentence or a punishment but is simply the status of the offender which is the result of a conviction for having committed certain crimes."

## 2004:

### Added Reporting Requirements for Changes in Residence and Penalty for Failure to Comply

-Added Fla. Stat. 943.0435 (4)(b): Registrant shall report in person within 48 hours to sheriff's office after vacating a permanent residence and failing to establish a new permanent or temporary residence, and update all personal identification information required to be provided in Fla. Stat. 943.0435 (2)(b); the registrant must provide an address for the residence or other location that he/she is or will be occupying.

-Added Fla. Stat. 943.0435 (4)(c): A registrant who remains at a permanent residence after reporting intent to vacate it must report in person within 48 hours to the sheriff's office. Failure to report is a second-degree felony.

### Prosecution and Strict Liability for Failure to Register

-Added Fla. Stat. 943.0435 (9)(b): Registrant may be prosecuted for any act or omission of this section in the county where the act or omission was committed, the county registrant last registered, or the county in which the original qualifying sexual offender conviction occurred.

-Added Fla. Stat. 943.0435 (9)(c): An arrest on charges of failure to register when the offender has been notified of his or her registration requirements, the service of an information or complaint for a violation of this section constitutes actual notice of duty to register. A registrant cannot assert in subsequent prosecution an affirmative defense of a lack of notice.

-Added Fla. Stat. 943.0435 (9)(d): Registration following arrest, service, or arraignment is not a defense.

## 2005:

### Semi-Annual Re-registration Imposed

-Added Fla. Stat. 943.0435 (14): Registrant must report in person each year during birthday month and six months after birth month to sheriff's office.  Re-registration shall include any changes to the personal identification information required at initial registration as listed in Fla. Stat. 943.0435 (14)(a)1, (14)(a)2, (14)(a)3, (14)(a)4.

### Criminal Penalties for Failure to Re-register and to Respond to Address Verification Correspondence

-Fla. Stat. 943.0435 (14)(a)4: Any registrant who fails to semi-annually re-register in person at the sheriff's office, or fails to respond to any address verification correspondence from FDLE within three weeks constitutes a third-degree felony.

## 2007:

### Expanded Qualifying Offenses and Juvenile Offenders Subject to Registration

-Fla. Stat. 943.0435 (1)(a)1: Added 794.05 ("Unlawful sexual activity with certain minors").

-Added Fla. Stat. 943.0435 (1)(d): A juvenile who was 14 years old or older at the time of their offense and has been adjudicated delinquent for committing, or attempting,

soliciting, or conspiring to commit, enumerated offenses in this state or similar offenses in another jurisdiction qualifies as a sexual offender.

## Definitions Added

-Added Fla. Stat. 943.0435 (1)(f): "Email address" definition as provided in Fla. Stat. 668.602(6) means a destination, commonly expressed as a string of characters, to which electronic mail may be sent or delivered.

-Added Fla. Stat. 943.0435(1)(g): Instant message name means an identifier that allows a person to communicate in real time with another person using the Internet.

## Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2)(a): Added email address and instant message name

-Fla. Stat. 943.0435 (2)(b): Added email address and instant message name

## Added Reporting Requirements

-Added Fla. Stat. 943.0435 (4)(d): Must register any email address or instant message name with FDLE prior to using them on or after October 1, 2007.  FDLE to establish online system for securely updating this information.

-Added Fla. Stat. 943.0435(3): The face of the registrant's driver's license or identification card must have the marking "943.0435, F.S."

## Re-Registration Requirements Imposed Quarterly on Certain Registrants

-Fla. Stat. 943.0435 (14)(a),(b): Registrants convicted of certain offenses in Florida or similar offenses in other jurisdictions required to re-register in person at the sheriff's office every 3 months for life.

## Ability to Petition for Removal from Lifetime Registration:  Denial and Constraint

-Fla. Stat. 943.0435 (11)(a)1. a.-g. Registrants permanently prohibited from filing for petition for removal from lifetime registration where their requirement to register was based upon an adult conviction of certain enumerated offenses.

-Fla. Stat. 943.0435 (11)(a)1: Period before otherwise qualified registrants may seek removal from lifetime registration increased from 20 years to "at least 25 years."

## 2009:

### Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2)(b): Added home telephone number and any cellphone number

## 2010:

### Definitions Added

-Fla. Stat. 943.0435 (1)(c), incorporating s. 775.21: "Transient residence" means a place or county where a person lives, remains, or is located for a period of 5 or more days in the aggregate during a calendar year and which is not the person's permanent or temporary address. The term includes, but is not limited to, a place where the person sleeps or seeks shelter and a location that has no specific street address.

### Reporting Requirements Expanded

-Fla. Stat. 943.0435 (2)(a): Reporting in person at sheriff's office within 48 hours transient residence within Florida, address, location or description, and dates of any current or known future temporary residence within Florida or out-of-state.

-Fla. Stat. 943.0435 (4)(b): A registrant who vacates a transient residence and fails to establish or maintain another residence must, within 48 hours after vacating transient residence, report in person to the sheriff's office and update all registration information. Transient registrant "must provide an address for the residence or other place that he or she is or will be located during the time in which he or she fails to establish or maintain a permanent or temporary residence."

-Fla. Stat. 943.0435 (4)(c): A transient registrant who remains at a transient residence after reporting an intent to vacate it shall, within 48 hours after that reporting, report in person to the agency for the purpose of reporting his or her transient address.  A transient who reports an intent to vacate his or her residence but fails to make a report that he or she has not changed his or her transient residence is guilty of a second-degree felony.

### Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2)(b): Transient residence address.

## 2012:

### Qualifying Offenses Expanded

-Fla. Stat. 943.0435 (1)(a)a.(I): Added 810.145(8) Video Voyeurism; and s. 787.06(3)(b), (d), (f), (g), or (h) Human Trafficking.

## 2013:

### Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2)(b): Fingerprints and photograph.

## 2014:

### Qualifying Offenses Expanded

-Fla. Stat. 943.0435 (1)(a)1. a. (I): Added s. 393.135(2) Sexual Misconduct with an Individual with a Developmental Disability; s. 394.4593(2) Sexual Misconduct with a Patient; s. 916.1075(2) Mentally Ill and Intellectually Disabled Defendants; Sexual Misconduct Prohibited.

### Definitions Added

-Fla. Stat. 943.0435 (1)(a)(2)(g): Incorporating s. 775.21(i) "'Internet identifier' means all electronic mail, chat, instant messenger, social networking, application software, or similar names used for Internet communication, but does not include a date of birth, social security number, or personal identification number (PIN)."

-Fla. Stat. 943.0435 (1)(a)(2)(h): Incorporating s. 775.21(n) "'Vehicles owned' means any motor vehicle as defined in s. 320.01, which is registered, coregistered, leased, titled, or rented by a sexual predator or sexual offender; a rented vehicle that a sexual predator or sexual offender is authorized to drive; or a vehicle for which a sexual predator or sexual offender is insured as a driver. The term also includes any motor vehicle as defined in s. 320.01, which is registered, coregistered, leased, titled, or rented by a person or persons residing at a sexual predator's or sexual offender's permanent residence for 5 or more consecutive days."

## Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2)(b):  Palm prints and make, model, color, vehicle identification number (VIN), and license tag number of all vehicles owned; all Internet identifiers; production of passport and documentation of immigration status; information regarding any professional licenses.

-Fla. Stat. 943.0435 (2)(b)2:  Volunteer status

-Added Fla. Stat. 943.0435 (2)(c): Registrant to "[p]rovide any other information determined necessary by the department, including criminal and corrections records; non-privileged personnel and treatment records; and evidentiary genetic markers, when available."

-Fla. Stat. 943.0435 (14)(c)(1): For reregistration: Added tattoos or other identifying marks; email addresses or Internet identifiers; vehicle identification number (VIN); palm prints; production of passport; if an alien, shall produce documents establishing his or her immigration status; information regarding any professional licenses.

-Fla. Stat. 943.0435 (14)(c)(2): Name, address, county of each institution and campus attended where registrant volunteers.

## Reporting Requirements Expanded

-Fla. Stat. 943.0435 (2)(b)2:  Volunteer status must be reported in person to sheriff's office within 48 hours after any change.

-Added Fla. Stat. 943.0435 (2)(b)3:  Registrant shall report in person to sheriff's office within 48 hours after any change in vehicles owned.

-Added Fla. Stat. 943.0435(4)(b)(2):  Transient registrant must report in person within 48 hours after establishing a transient residence and thereafter must report in person every 30 days.  Must provide addresses and locations of transient residence.  Reporting in person for this does not make the registrant exempt from the other reporting requirements.

-Added Fla. Stat. 943.0435 (4)(d): The failure of a registrant who maintains a transient residence to report in person to the sheriff's office every 30 days as required in Fla. Stat. 943.0435 (b)2 is punishable as a third-degree felony.

-Added Fla. Stat. 943.0435 (4)(e):  Registrant shall register all electronic mail addresses and Internet identifiers with the department before use.

-Fla. Stat. 943.0435 (6): County and local law enforcement agencies, in conjunction with the department, shall verify the addresses of sexual offenders who are under the care, custody, control, or supervision of the Department of Corrections.

-Fla. Stat. 943.0435 (7): Must report in person to the sheriff's office within 21 days before planned departure date if the intended residence of 5 days or more is outside of the United States.  Notification to include country of intended residence.

### Restrictions on Removal Petition Added

-Fla. Stat. 943.0435 (11)(4)(e): If sentenced to more than 25 years' supervision, registrant may not petition for removal from registry until the term of supervision for that conviction is completed.

## 2016:

### Qualifying Offenses Expanded

-Fla. Stat. 943.0435 (1): Added Fla. Stat. s. 895.03 Racketeering involving sexual offense.  Including "where defendant is victim's parent or guardian" to s. 787.01, s. 787.02, or s. 787.025(2)(c).

### Definitions Added

-Fla. Stat. 943.0435 (1)(a): Incorporating 775.21(i) "'Institution of higher education' means a career center, a community college, a college, a state university, or an independent postsecondary institution."

-Fla. Stat. 943.0435 (1)(d): Incorporating 775.21(a) "'Change in status at an institution of higher education' means the commencement or termination of enrollment, including, but not limited to, traditional classroom setting or online courses, or employment, whether for compensation or as a volunteer, at an institution of higher education or a change in location of enrollment or employment, whether for compensation or as a volunteer, at an institution of higher education."

-Fla. Stat. 943.0435 (1)(g): Incorporating 775.21(l) "'Professional license' means the document of authorization or certification issued by an agency of this state for a regulatory purpose, or by any similar agency in another jurisdiction for a regulatory purpose, to a person to engage in an occupation or to carry out a trade or business."

### Personal Identification Information Expanded

-Fla. Stat. 943.0435(4)(e)1: Registrant must report electronic mail addresses and Internet identifiers through the department's online system or in person at the sheriff's office before use.

-Added Fla. Stat. 943.0435 (4)(e)2: Registrant shall register all changes to home telephone numbers and cellular telephone numbers, including added and deleted numbers, all changes to employment information, and all changes in status related to enrollment, volunteering, or employment at institutions of higher education, through the department's online system or in person at the sheriff's office; in person at the Department of Corrections if the sexual offender is in the custody or control, or under the supervision, of the Department of Corrections; or in person at the Department of Juvenile Justice if the sexual offender is in the custody or control, or under the supervision, of the Department of Juvenile Justice. All changes must be reported within 48 hours.

### Added Reporting Requirements

-Fla. Stat. 943.0435 (7): For international travel, the sexual offender shall also provide travel information in person to the sheriff's office at least 21 days before he or she intends to travel, including, but not limited to, expected departure and return dates, flight number, airport of departure, cruise port of departure, or any other means of intended travel.

## 2017:

### Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2)(a),(2)(b): Added "each Internet identifier's corresponding website homepage or application software name."

### Added Reporting Requirements

-Fla. Stat. 943.0435(4)(e)1: Registrant must report electronic email addresses, Internet identifiers, and each Internet identifier's corresponding website homepage or application software name within 48 hours after use.

### Reregistration Reporting Requirements

-Fla. Stat. 943.0435 (14)(c)(1): Added each Internet identifier's corresponding website homepage or application software name

## 2018:

## Definitions Added

-Fla. Stat. 943.0435 (1)(f), incorporating s. 775.21(k):   "Permanent residence" means a place where the person abides, lodges, or resides for 3 (formerly 5) or more consecutive days.

-Fla. Stat. 943.0435 (1)(f), incorporating s. 775.21(n):   "Temporary residence" means a place where the person abides, lodges, or resides, including, but not limited to, vacation, business, or personal travel destinations in or out of this state, for a period of 3 (formerly 5) or more days in the aggregate during any calendar year and which is not the person's permanent address or, for a person whose permanent residence is not in this state, a place where the person is employed, practices a vocation, or is enrolled as a student for any period of time in this state.

-Fla. Stat. 943.0435 (1)(f), incorporating s. 775.21(o):   "Transient residence" means a county where a person lives, remains, or is located for a period of 3 (formerly 5) or more days in the aggregate during a calendar year and which is not the person's permanent or temporary address. The term includes, but is not limited to, a place where the person sleeps or seeks shelter and a location that has no specific street address.

## Mandatory Minimum Sentencing for Violations of Failure to Report

-Fla. Stat. 943.0435 (9)(b): For a felony violation of this section, committed on or after July 1, 2018, if the court does not impose a prison sentence, the court shall impose a mandatory minimum term of community control, as defined in s. 948.001, as follows:
1.   For a first offense, a mandatory minimum term of 6 months with electronic monitoring.
2.   For a second offense, a mandatory minimum term of 1 year with electronic monitoring.
3.   For a third or subsequent offense, a mandatory minimum term of 2 years with electronic monitoring.

**1997 original list of qualifying offenses:**

1.     787.025 Luring or enticing a child;
2.     Chapter 794 Sexual Battery;
3.     796.03 Procuring person under age of 18 for prostitution;
4.     800.04 Lewd, lascivious, or indecent assault or act upon or in presence of child;
5.     827.071 Sexual performance by a child;
6.     847.0133 Protection of minors; prohibition of certain acts in connection with obscenity
7.     847.0135 Computer pornography;
8.     847.0145 Selling or buying of minors.

**2018 list of qualifying offenses:**

1.     393.135(2) Sexual Misconduct with an individual with a developmental disability
2.     394.4593(2) Sexual Misconduct with a patient
3.     787.01 Kidnapping
4.     787.02 False Imprisonment
5.     787.025(2)(c), Luring or enticing a child, where victim is a minor
6.     787.06(3)(b), (d), (f), or (g) Human Trafficking (former 787.06(3)(h))
7.     794.011 Sexual Battery, excluding 794.011(10)
8.     794.05 Unlawful sexual activity with certain minors (former 796.03; former 796.035)
9.     800.04 Lewd or lascivious offenses committed upon or in the presence of persons less than 16 years of age
10.    810.145(8) Video Voyeurism
11.    825.1025 Lewd or lascivious offenses committed upon or in the presence of an elderly person or disabled person
12.    827.071 Sexual performance by a child
13.    847.0133 Protection of minors; prohibition of certain acts in connection with obscenity;
14.    847.0135 Computer pornography; prohibited computer usage; traveling to meet minor (excluding 847.0135(6))
15.    847.0137 Transmission of pornography by electronic device or equipment prohibited
16.    847.0138 Transmission of material harmful to minors to a minor by electronic device or equipment prohibited
17.    847.0145 Selling or buying of minors
18.    895.03 Racketeering involving sexual offense
19.    916.1075(2) Mentally Ill and Intellectually Disabled Defendants; Sexual misconduct prohibited
20.    985.701(1) Juvenile Justice; Interstate Compact on Juveniles; Sexual misconduct prohibited

**2018 Statute (current as of 8.28.18)**

**943.0435   Sexual offenders required to register with the department; penalty.—**
**(1)**   As used in this section, the term:
    **(a)**   "Change in status at an institution of higher education" has the same meaning as provided in s. 775.21.
    **(b)**   "Convicted" means that there has been a determination of guilt as a result of a trial or the entry of a plea of guilty or nolo contendere, regardless of whether adjudication is withheld, and includes an adjudication of delinquency of a juvenile as specified in this section. Conviction of a similar offense includes, but is not limited to, a conviction by a federal or military tribunal, including courts-martial conducted by the Armed Forces of the United States, and includes a conviction or entry of a plea of guilty or nolo contendere resulting in a sanction in any state of the United States or other jurisdiction. A sanction includes, but is not limited to, a fine, probation, community control, parole, conditional release, control release, or incarceration in a state prison, federal prison, private correctional facility, or local detention facility.
    **(c)**   "Electronic mail address" has the same meaning as provided in s. 668.602.
    **(d)**   "Institution of higher education" has the same meaning as provided in s. 775.21.
    **(e)**   "Internet identifier" has the same meaning as provided in s. 775.21.
    **(f)**   "Permanent residence," "temporary residence," and "transient residence" have the same meaning as provided in s. 775.21.
    **(g)**   "Professional license" has the same meaning as provided in s. 775.21.
    **(h)**

        **1.**   "Sexual offender" means a person who meets the criteria in sub-subparagraph a., sub-subparagraph b., sub-subparagraph c., or sub-subparagraph d., as follows:

            **a.(I)**   Has been convicted of committing, or attempting, soliciting, or conspiring to commit, any of the criminal offenses proscribed in the following statutes in this state or similar offenses in another jurisdiction: s. 393.135(2); s. 394.4593(2); s. 787.01, s. 787.02, or s. 787.025(2)(c), where the victim is a minor; s. 787.06(3) (b), (d), (f), or (g); former s. 787.06(3) (h); s. 794.011, excluding s. 794.011(10); s. 794.05; former s. 796.03; former s. 796.035; s. 800.04; s. 810.145(8); s. 825.1025; s. 827.071; s. 847.0133; s. 847.0135, excluding s. 847.0135(6); s. 847.0137; s. 847.0138; s. 847.0145; s. 895.03, if the court makes a written finding that the racketeering activity involved at least one sexual offense listed in this sub-sub-subparagraph or at least one offense listed in this sub-sub-subparagraph with sexual intent or motive; s. 916.1075(2); or s. 985.701(1); or any similar offense committed in this state which has been redesignated from a former statute number to one of those listed in this sub-sub-subparagraph; and
            **(II)**   Has been released on or after October 1, 1997, from the sanction imposed for any conviction of an offense described in sub-sub-

subparagraph (I). For  purposes of sub-sub-subparagraph (I), a sanction imposed in this state or in any other jurisdiction includes, but is not limited to, a fine, probation, community control, parole, conditional release, control release, or incarceration in a state prison, federal prison, private correctional facility, or local detention facility;

**b.**   Establishes or maintains a residence in this state and who has not been designated as a sexual predator by a court of this state but who has been designated as a sexual predator, as a sexually violent predator, or by another sexual offender designation in another state or jurisdiction and was, as a result of such designation, subjected to registration or community or public notification, or both, or would be if the person were a resident of that state or jurisdiction, without regard to whether the person otherwise meets the criteria for registration as a sexual offender;

**c.**   Establishes or maintains a residence in this state who is in the custody or control of, or under the supervision of, any other state or jurisdiction as a result of a conviction for committing, or attempting, soliciting, or conspiring to commit, any of the criminal offenses proscribed in the following statutes or similar offense in another jurisdiction: s. 393.135(2); s. 394.4593(2); s. 787.01, s. 787.02, or s. 787.025(2)(c), where the victim is a minor; s. 787.06(3)(b), (d), (f), or (g); former s. 787.06(3)(h); s. 794.011, excluding s. 794.011(10); s. 794.05; former s. 796.03; former s. 796.035; s. 800.04; s. 810.145(8); s. 825.1025; s. 827.071; s. 847.0133; s. 847.0135, excluding s. 847.0135(6); s. 847.0137; s. 847.0138; s. 847.0145; s. 895.03, if the court makes a written finding that the racketeering activity involved at least one sexual offense listed in this sub-subparagraph or at least one offense listed in this sub-subparagraph with sexual intent or motive; s. 916.1075(2); or s. 985.701(1); or any similar offense committed in this state which has been redesignated from a former statute number to one of those listed in this sub-subparagraph; or

**d.**   On or after July 1, 2007, has been adjudicated delinquent for committing, or attempting, soliciting, or conspiring to commit, any of the criminal offenses proscribed in the following statutes in this state or similar offenses in another jurisdiction when the juvenile was 14 years of age or older at the time of the offense:

   **(I)**   Section 794.011, excluding s. 794.011(10);

   **(II)**   Section 800.04(4)(a)2. where the victim is under 12 years of age or where the court finds sexual activity by the use of force or coercion;

   **(III)**   Section 800.04(5)(c)1. where the court finds molestation involving unclothed genitals;

   **(IV)**   Section 800.04(5)(d) where the court finds the use of force or coercion and unclothed genitals; or

**(V)**   Any similar offense committed in this state which has been redesignated from a former statute number to one of those listed in this sub-subparagraph.

**2.**   For all qualifying offenses listed in sub-subparagraph 1.d., the court shall make a written finding of the age of the offender at the time of the offense.  For each violation of a qualifying offense listed in this subsection, except for a violation of s. 794.011, the court shall make a written finding of the age of the victim at the time of the offense. For a violation of s. 800.04(4), the court shall also make a written finding indicating whether the offense involved sexual activity and indicating whether the offense involved force or coercion. For a violation of s. 800.04(5), the court shall also make a written finding that the offense did or did not involve unclothed genitals or genital area and that the offense did or did not involve the use of force or coercion.

**(i)**   "Vehicles owned" has the same meaning as provided in s. 775.21.

**(2)**   Upon initial registration, a sexual offender shall:

**(a)**   Report in person at the sheriff's office:

**1.**   In the county in which the offender establishes or maintains a permanent, temporary, or transient residence within 48 hours after:

**a.**   Establishing permanent, temporary, or transient residence in this state; or

**b.**   Being released from the custody, control, or supervision of the Department of Corrections or from the custody of a private correctional facility; or

**2.**   In the county where he or she was convicted within 48 hours after being convicted for a qualifying offense for registration under this section if the offender is not in the custody or control of, or under the supervision of, the Department of Corrections, or is not in the custody of a private correctional facility.

Any change in the information required to be provided pursuant to paragraph (b), including, but not limited to, any change in the sexual offender's permanent, temporary, or transient residence; name; electronic mail addresses; Internet identifiers and each Internet identifier's corresponding website homepage or application software name; home telephone numbers and cellular telephone numbers; employment information; and any change in status at an institution of higher education after the sexual offender reports in person at the sheriff's office must be reported in the manner provided in subsections (4), (7), and (8).

**(b)**   Provide his or her name; date of birth; social security number; race; sex; height; weight; hair and eye color; tattoos or other identifying marks; fingerprints; palm prints; photograph; employment information; address of permanent or legal residence or address of any current temporary residence, within the state or out of state, including a rural route address and a post office box; if no permanent or temporary address, any transient

residence within the state, address, location or description, and dates of any current or known future temporary residence within the state or out of state; the make, model, color, vehicle identification number (VIN), and license tag number of all vehicles owned; home telephone numbers and cellular telephone numbers; electronic mail addresses; Internet identifiers and each Internet identifier's corresponding website homepage or application software name; date and place of each conviction; and a brief description of the crime or crimes committed by the offender. A post office box may not be provided in lieu of a physical residential address. The sexual offender shall also produce his or her passport, if he or she has a passport, and, if he or she is an alien, shall produce or provide information about documents establishing his or her immigration status. The sexual offender shall also provide information about any professional licenses he or she has.

    **1.**  If the sexual offender's place of residence is a motor vehicle, trailer, mobile home, or manufactured home, as defined in chapter 320, the sexual offender shall also provide to the department through the sheriff's office written notice of the vehicle identification number; the license tag number; the registration number; and a description, including color scheme, of the motor vehicle, trailer, mobile home, or manufactured home. If the sexual offender's place of residence is a vessel, live-aboard vessel, or houseboat, as defined in chapter 327, the sexual offender shall also provide to the department written notice of the hull identification number; the manufacturer's serial number; the name of the vessel, live-aboard vessel, or houseboat; the registration number; and a description, including color scheme, of the vessel, live-aboard vessel, or houseboat.

    **2.**  If the sexual offender is enrolled or employed, whether for compensation or as a volunteer, at an institution of higher education in this state, the sexual offender shall also provide to the department the name, address, and county of each institution, including each campus attended, and the sexual offender's enrollment, volunteer, or employment status. The sheriff, the Department of Corrections, or the Department of Juvenile Justice shall promptly notify each institution of higher education of the sexual offender's presence and any change in the sexual offender's enrollment, volunteer, or employment status.

    **3.**  A sexual offender shall report in person to the sheriff's office within 48 hours after any change in vehicles owned to report those vehicle information changes.

**(c)**  Provide any other information determined necessary by the department, including criminal and corrections records; nonprivileged personnel and treatment records; and evidentiary genetic markers, when available.

When a sexual offender reports at the sheriff's office, the sheriff shall take a photograph, a set of fingerprints, and palm prints of the offender and forward the photographs, palm prints, and fingerprints to the department, along with the information provided by the sexual offender. The sheriff shall promptly provide to the department the information received from the sexual offender.

**(3)**   Within 48 hours after the report required under subsection (2), a sexual offender shall report in person at a driver license office of the Department of Highway Safety and Motor Vehicles, unless a driver license or identification card that complies with the requirements of s. 322.141(3) was previously secured or updated under s. 944.607. At the driver license office the sexual offender shall:

    **(a)**   If otherwise qualified, secure a Florida driver license, renew a Florida driver license, or secure an identification card. The sexual offender shall identify himself or herself as a sexual offender who is required to comply with this section and shall provide proof that the sexual offender reported as required in subsection (2). The sexual offender shall provide any of the information specified in subsection (2), if requested. The sexual offender shall submit to the taking of a photograph for use in issuing a driver license, renewed license, or identification card, and for use by the department in maintaining current records of sexual offenders.

    **(b)**   Pay the costs assessed by the Department of Highway Safety and Motor Vehicles for issuing or renewing a driver license or identification card as required by this section. The driver license or identification card issued must be in compliance with s. 322.141(3).

    **(c)**   Provide, upon request, any additional information necessary to confirm the identity of the sexual offender, including a set of fingerprints.

**(4)**

    **(a)**   Each time a sexual offender's driver license or identification card is subject to renewal, and, without regard to the status of the offender's driver license or identification card, within 48 hours after any change in the offender's permanent, temporary, or transient residence or change in the offender's name by reason of marriage or other legal process, the offender shall report in person to a driver license office, and is subject to the requirements specified in subsection (3). The Department of Highway Safety and Motor Vehicles shall forward to the department all photographs and information provided by sexual offenders. Notwithstanding the restrictions set forth in s. 322.142, the Department of Highway Safety and Motor Vehicles may release a reproduction of a color-photograph or digital-image license to the Department of Law Enforcement for purposes of public notification of sexual offenders as provided in this section and ss. 943.043 and 944.606. A sexual offender who is unable to secure or update a driver license or an identification card with the Department of Highway Safety and Motor Vehicles as provided in subsection (3) and this subsection shall also report any change in the sexual offender's permanent, temporary, or transient residence or change in the offender's name by reason of marriage or other legal process within 48 hours after the change to the sheriff's office in the county where the offender resides or is located and provide confirmation that he or she reported such information to the Department of Highway Safety and Motor Vehicles. The reporting requirements under this paragraph do not negate the requirement for a sexual offender to obtain a Florida driver license or an identification card as required in this section.

    **(b)**

    **1.**   A sexual offender who vacates a permanent, temporary, or transient residence and fails to establish or maintain another permanent, temporary, or transient residence shall, within 48 hours after vacating the permanent, temporary, or transient residence, report in person to the sheriff's office of the county in which he or she is located. The sexual offender shall specify the date upon which he or she intends to or did vacate such residence. The sexual offender must provide or update all of the registration information required under paragraph (2)(b). The sexual offender must provide an address for the residence or other place that he or she is or will be located during the time in which he or she fails to establish or maintain a permanent or temporary residence.

    **2.**   A sexual offender shall report in person at the sheriff's office in the county in which he or she is located within 48 hours after establishing a transient residence and thereafter must report in person every 30 days to the sheriff's office in the county in which he or she is located while maintaining a transient residence. The sexual offender must provide the addresses and locations where he or she maintains a transient residence. Each sheriff's office shall establish procedures for reporting transient residence information and provide notice to transient registrants to report transient residence information as required in this subparagraph. Reporting to the sheriff's office as required by this subparagraph does not exempt registrants from any reregistration requirement. The sheriff may coordinate and enter into agreements with police departments and other governmental entities to facilitate additional reporting sites for transient residence registration required in this subparagraph. The sheriff's office shall, within 2 business days, electronically submit and update all information provided by the sexual offender to the department.

**(c)**   A sexual offender who remains at a permanent, temporary, or transient residence after reporting his or her intent to vacate such residence shall, within 48 hours after the date upon which the offender indicated he or she would or did vacate such residence, report in person to the agency to which he or she reported pursuant to paragraph (b) for the purpose of reporting his or her address at such residence. When the sheriff receives the report, the sheriff shall promptly convey the information to the department. An offender who makes a report as required under paragraph (b) but fails to make a report as required under this paragraph commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

**(d)**   The failure of a sexual offender who maintains a transient residence to report in person to the sheriff's office every 30 days as required in subparagraph (b)2. is punishable as provided in subsection (9).

**(e)**

    **1.**   A sexual offender shall register all electronic mail addresses and Internet identifiers, and each Internet identifier's corresponding website homepage or application software name, with the department through the department's online system or in person at the sheriff's office within 48 hours after using such electronic mail addresses and Internet identifiers. If the sexual offender is in the

custody or control, or under the supervision, of the Department of Corrections, he or she must report all electronic mail addresses and Internet identifiers, and each Internet identifier's corresponding website homepage or application software name, to the Department of Corrections before using such electronic mail addresses or Internet identifiers. If the sexual offender is in the custody or control, or under the supervision, of the Department of Juvenile Justice, he or she must report all electronic mail addresses and Internet identifiers, and each Internet identifier's corresponding website homepage or application software name, to the Department of Juvenile Justice before using such electronic mail addresses or Internet identifiers.

**2.**   A sexual offender shall register all changes to home telephone numbers and cellular telephone numbers, including added and deleted numbers, all changes to employment information, and all changes in status related to enrollment, volunteering, or employment at institutions of higher education, through the department's online system; in person at the sheriff's office; in person at the Department of Corrections if the sexual offender is in the custody or control, or under the supervision, of the Department of Corrections; or in person at the Department of Juvenile Justice if the sexual offender is in the custody or control, or under the supervision, of the Department of Juvenile Justice. All changes required to be reported under this subparagraph must be reported within 48 hours after the change.

**3.**   The department shall establish an online system through which sexual offenders may securely access, submit, and update all changes in status to electronic mail addresses; Internet identifiers and each Internet identifier's corresponding website homepage or application software name; home telephone numbers and cellular telephone numbers; employment information; and institution of higher education information.

**(5)**   This section does not apply to a sexual offender who is also a sexual predator, as defined in s. 775.21. A sexual predator must register as required under s. 775.21.

**(6)**   County and local law enforcement agencies, in conjunction with the department, shall verify the addresses of sexual offenders who are not under the care, custody, control, or supervision of the Department of Corrections, and may verify the addresses of sexual offenders who are under the care, custody, control, or supervision of the Department of Corrections, in a manner that is consistent with the provisions of the federal Adam Walsh Child Protection and Safety Act of 2006 and any other federal standards applicable to such verification or required to be met as a condition for the receipt of federal funds by the state. Local law enforcement agencies shall report to the department any failure by a sexual offender to comply with registration requirements.

**(7)**   A sexual offender who intends to establish a permanent, temporary, or transient residence in another state or jurisdiction other than the State of Florida shall report in person to the sheriff of

the county of current residence within 48 hours before the date he or she intends to leave this state to establish residence in another state or jurisdiction or at least 21 days before the date he or she intends to travel if the intended residence of 5 days or more is outside of the United States. Any travel that is not known by the sexual offender 21 days before the departure date must be reported in person to the sheriff's office as soon as possible before departure. The sexual offender shall provide to the sheriff the address, municipality, county, state, and country of intended residence. For international travel, the sexual offender shall also provide travel information, including, but not limited to, expected departure and return dates, flight number, airport of departure, cruise port of departure, or any other means of intended travel. The sheriff shall promptly provide to the department the information received from the sexual offender. The department shall notify the statewide law enforcement agency, or a comparable agency, in the intended state, jurisdiction, or country of residence of the sexual offender's intended residence. The failure of a sexual offender to provide his or her intended place of residence is punishable as provided in subsection (9).

**(8)**   A sexual offender who indicates his or her intent to establish a permanent, temporary, or transient residence in another state, a jurisdiction other than the State of Florida, or another country and later decides to remain in this state shall, within 48 hours after the date upon which the sexual offender indicated he or she would leave this state, report in person to the sheriff to which the sexual offender reported the intended change of permanent, temporary, or transient residence, and report his or her intent to remain in this state. The sheriff shall promptly report this information to the department. A sexual offender who reports his or her intent to establish a permanent, temporary, or transient residence in another state, a jurisdiction other than the State of Florida, or another country but who remains in this state without reporting to the sheriff in the manner required by this subsection commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

**(9)**

    **(a)**   A sexual offender who does not comply with the requirements of this section commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

    **(b)**   For a felony violation of this section, excluding subsection (13), committed on or after July 1, 2018, if the court does not impose a prison sentence, the court shall impose a mandatory minimum term of community control, as defined in s. 948.001, as follows:

        **1.**   For a first offense, a mandatory minimum term of 6 months with electronic monitoring.

        **2.**   For a second offense, a mandatory minimum term of 1 year with electronic monitoring.

        **3.**   For a third or subsequent offense, a mandatory minimum term of 2 years with electronic monitoring.

    **(c)**   A sexual offender who commits any act or omission in violation of this section may be prosecuted for the act or omission in the county in which the act or omission was committed, in the county of the last registered address of the sexual offender, in the

county in which the conviction occurred for the offense or offenses that meet the criteria for designating a person as a sexual offender, in the county where the sexual offender was released from incarceration, or in the county of the intended address of the sexual offender as reported by the offender prior to his or her release from incarceration.

**(d)**     An arrest on charges of failure to register when the offender has been provided and advised of his or her statutory obligations to register under subsection (2), the service of an information or a complaint for a violation of this section, or an arraignment on charges for a violation of this section constitutes actual notice of the duty to register. A sexual offender's failure to immediately register as required by this section following such arrest, service, or arraignment constitutes grounds for a subsequent charge of failure to register. A sexual offender charged with the crime of failure to register who asserts, or intends to assert, a lack of notice of the duty to register as a defense to a charge of failure to register shall immediately register as required by this section. A sexual offender who is charged with a subsequent failure to register may not assert the defense of a lack of notice of the duty to register. Registration following such arrest, service, or arraignment is not a defense and does not relieve the sexual offender of criminal liability for the failure to register.

**(10)**     The department, the Department of Highway Safety and Motor Vehicles, the Department of Corrections, the Department of Juvenile Justice, any law enforcement agency in this state, and the personnel of those departments; an elected or appointed official, public employee, or school administrator; or an employee, agency, or any individual or entity acting at the request or upon the direction of any law enforcement agency is immune from civil liability for damages for good faith compliance with the requirements of this section or for the release of information under this section, and shall be presumed to have acted in good faith in compiling, recording, reporting, or releasing the information. The presumption of good faith is not overcome if a technical or clerical error is made by the department, the Department of Highway Safety and Motor Vehicles, the Department of Corrections, the Department of Juvenile Justice, the personnel of those departments, or any individual or entity acting at the request or upon the direction of any of those departments in compiling or providing information, or if information is incomplete or incorrect because a sexual offender fails to report or falsely reports his or her current place of permanent, temporary, or transient residence.

**(11)**     Except as provided in s. 943.04354, a sexual offender shall maintain registration with the department for the duration of his or her life unless the sexual offender has received a full pardon or has had a conviction set aside in a postconviction proceeding for any offense that meets the criteria for classifying the person as a sexual offender for purposes of registration. However, a sexual offender shall be considered for removal of the requirement to register as a sexual offender only if the person:

**(a)**

**1.**     Has been lawfully released from confinement, supervision, or sanction, whichever is later, for at least 25 years and has not been arrested for any felony or

misdemeanor offense since release, provided that the sexual offender's requirement to register was not based upon an adult conviction:

    **a.**   For a violation of s. <u>787.01</u> or s. <u>787.02</u>;

    **b.**   For a violation of s. <u>794.011</u>, excluding s. <u>794.011</u>(10);

    **c.**   For a violation of s. <u>800.04</u>(4)(a)2. where the court finds the offense involved a victim under 12 years of age or sexual activity by the use of force or coercion;

    **d.**   For a violation of s. <u>800.04</u>(5)(b);

    **e.**   For a violation of s. <u>800.04</u>(5)(c)2. where the court finds the offense involved the use of force or coercion and unclothed genitals or genital area;

    **f.**   For a violation of s. <u>825.1025</u>(2)(a);

    **g.**   For any attempt or conspiracy to commit any such offense;

    **h.**   For a violation of similar law of another jurisdiction; or

    **i.**   For a violation of a similar offense committed in this state which has been redesignated from a former statute number to one of those listed in this subparagraph.

**2.**   If the sexual offender meets the criteria in subparagraph 1., the sexual offender may, for the purpose of removing the requirement for registration as a sexual offender, petition the criminal division of the circuit court of the circuit:

    **a.**   Where the conviction or adjudication occurred, for a conviction in this state;

    **b.**   Where the sexual offender resides, for a conviction of a violation of similar law of another jurisdiction; or

    **c.**   Where the sexual offender last resided, for a sexual offender with a conviction of a violation of similar law of another jurisdiction who no longer resides in this state.

**3.**   The court may grant or deny relief if the offender demonstrates to the court that he or she has not been arrested for any crime since release; the requested relief complies with the federal Adam Walsh Child Protection and Safety Act of 2006 and any other federal standards applicable to the removal of registration requirements for a sexual offender or required to be met as a condition for the receipt of federal funds by the state; and the court is otherwise satisfied that the offender is not a current or potential threat to public safety. The state attorney in the circuit in which the petition is filed must be given notice of the petition at least 3 weeks before the hearing on the matter. The state attorney may present evidence in opposition to the requested relief or may otherwise demonstrate the reasons why the petition should be denied. If the court denies the petition, the court may set a future date at which the sexual offender may again petition the court for relief, subject to the standards for relief provided in this subsection.

**4.**   The department shall remove an offender from classification as a sexual offender for purposes of registration if the offender provides to the department a certified copy of the court's written findings or order that indicates that the

offender is no longer required to comply with the requirements for registration as a sexual offender.

**(b)** As defined in sub-subparagraph (1)(h)1.b. must maintain registration with the department for the duration of his or her life until the person provides the department with an order issued by the court that designated the person as a sexual predator, as a sexually violent predator, or by another sexual offender designation in the state or jurisdiction in which the order was issued which states that such designation has been removed or demonstrates to the department that such designation, if not imposed by a court, has been removed by operation of law or court order in the state or jurisdiction in which the designation was made, and provided such person no longer meets the criteria for registration as a sexual offender under the laws of this state.

**(12)** The Legislature finds that sexual offenders, especially those who have committed offenses against minors, often pose a high risk of engaging in sexual offenses even after being released from incarceration or commitment and that protection of the public from sexual offenders is a paramount government interest. Sexual offenders have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government. Releasing information concerning sexual offenders to law enforcement agencies and to persons who request such information, and the release of such information to the public by a law enforcement agency or public agency, will further the governmental interests of public safety. The designation of a person as a sexual offender is not a sentence or a punishment but is simply the status of the offender which is the result of a conviction for having committed certain crimes.

**(13)** Any person who has reason to believe that a sexual offender is not complying, or has not complied, with the requirements of this section and who, with the intent to assist the sexual offender in eluding a law enforcement agency that is seeking to find the sexual offender to question the sexual offender about, or to arrest the sexual offender for, his or her noncompliance with the requirements of this section:

**(a)** Withholds information from, or does not notify, the law enforcement agency about the sexual offender's noncompliance with the requirements of this section, and, if known, the whereabouts of the sexual offender;

**(b)** Harbors, or attempts to harbor, or assists another person in harboring or attempting to harbor, the sexual offender; or

**(c)** Conceals or attempts to conceal, or assists another person in concealing or attempting to conceal, the sexual offender; or

**(d)** Provides information to the law enforcement agency regarding the sexual offender that the person knows to be false information,

commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

**(14)**

**(a)** A sexual offender must report in person each year during the month of the sexual offender's birthday and during the sixth month following the sexual offender's birth

month to the sheriff's office in the county in which he or she resides or is otherwise located to reregister.

**(b)**    However, a sexual offender who is required to register as a result of a conviction for:

    **1.**    Section 787.01 or s. 787.02 where the victim is a minor;

    **2.**    Section 794.011, excluding s. 794.011(10);

    **3.**    Section 800.04(4)(a)2. where the court finds the offense involved a victim under 12 years of age or sexual activity by the use of force or coercion;

    **4.**    Section 800.04(5)(b);

    **5.**    Section 800.04(5)(c)1. where the court finds molestation involving unclothed genitals or genital area;

    **6.**    Section 800.04(5)(c)2. where the court finds molestation involving the use of force or coercion and unclothed genitals or genital area;

    **7.**    Section 800.04(5)(d) where the court finds the use of force or coercion and unclothed genitals or genital area;

    **8.**    Section 825.1025(2)(a);

    **9.**    Any attempt or conspiracy to commit such offense;

    **10.**    A violation of a similar law of another jurisdiction; or

    **11.**    A violation of a similar offense committed in this state which has been redesignated from a former statute number to one of those listed in this paragraph, must reregister each year during the month of the sexual offender's birthday and every third month thereafter.

**(c)**    The sheriff's office may determine the appropriate times and days for reporting by the sexual offender, which must be consistent with the reporting requirements of this subsection. Reregistration must include any changes to the following information:

    **1.**    Name; social security number; age; race; sex; date of birth; height; weight; tattoos or other identifying marks; hair and eye color; address of any permanent residence and address of any current temporary residence, within the state or out of state, including a rural route address and a post office box; if no permanent or temporary address, any transient residence within the state; address, location or description, and dates of any current or known future temporary residence within the state or out of state; all electronic mail addresses or Internet identifiers and each Internet identifier's corresponding website homepage or application software name; all home telephone numbers and cellular telephone numbers; employment information; the make, model, color, vehicle identification number (VIN), and license tag number of all vehicles owned; fingerprints; palm prints; and photograph. A post office box may not be provided in lieu of a physical residential address. The sexual offender shall also produce his or her passport, if he or she has a passport, and, if he or she is an alien, shall produce or provide information about documents establishing his or her immigration status. The sexual offender shall also provide information about any professional licenses he or she has.

    **2.**    If the sexual offender is enrolled or employed, whether for compensation or as a volunteer, at an institution of higher education in this state, the sexual

offender shall also provide to the department the name, address, and county of each institution, including each campus attended, and the sexual offender's enrollment, volunteer, or employment status.

**3.**   If the sexual offender's place of residence is a motor vehicle, trailer, mobile home, or manufactured home, as defined in chapter 320, the sexual offender shall also provide the vehicle identification number; the license tag number; the registration number; and a description, including color scheme, of the motor vehicle, trailer, mobile home, or manufactured home. If the sexual offender's place of residence is a vessel, live-aboard vessel, or houseboat, as defined in chapter 327, the sexual offender shall also provide the hull identification number; the manufacturer's serial number; the name of the vessel, live-aboard vessel, or houseboat; the registration number; and a description, including color scheme, of the vessel, live-aboard vessel, or houseboat.

**4.**   Any sexual offender who fails to report in person as required at the sheriff's office, who fails to respond to any address verification correspondence from the department within 3 weeks of the date of the correspondence, who fails to report all electronic mail addresses and all Internet identifiers, and each Internet identifier's corresponding website homepage or application software name, or who knowingly provides false registration information by act or omission commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

**(d)**   The sheriff's office shall, within 2 working days, electronically submit and update all information provided by the sexual offender to the department in a manner prescribed by the department.

**History.**—s. 8, ch. 97-299; s. 7, ch. 98-81; s. 114, ch. 99-3; s. 3, ch. 2000-207; s. 3, ch. 2000-246; s. 3, ch. 2002-58; s. 2, ch. 2004-371; s. 9, ch. 2005-28; s. 3, ch. 2006-200; s. 4, ch. 2006-299; s. 159, ch. 2007-5; s. 10, ch. 2007-143; s. 4, ch. 2007-207; s. 2, ch. 2007-209; s. 3, ch. 2009-194; s. 4, ch. 2010-92; s. 4, ch. 2012-19; s. 11, ch. 2012-97; s. 11, ch. 2013-116; s. 10, ch. 2014-4; s. 5, ch. 2014-5; s. 26, ch. 2014-160; s. 99, ch. 2015-2; ss. 10, 51, ch. 2016-24; s. 3, ch. 2016-104; s. 2, ch. 2017-170; s. 2, ch. 2018-105.