**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 18-24145-CIV-WILLIAMS/TORRES

JOHN DOE 1, *et al,*

*Plaintiffs*,

v.

MARK GLASS, in his official capacity as Commissioner of the Florida Department of Law Enforcement,

*Defendant*.
_______________________________________/

## *ORDER ON PLAINTIFFS' MOTION TO AMEND THIRD AMENDED COMPLAINT*

This case presents the question whether two registered sexual offenders should be permitted to file a fifth complaint challenging, as applied to them, Florida's requirement that a registrant report in person to the sheriff before leaving the State to establish a residence or work elsewhere. Fla. Stat. § 943.0435(7). The issue arises on Plaintiffs' Motion to Amend Third Amended Complaint [D.E. 276], which seeks leave to file the proposed Fourth Amended Verified Complaint [D.E. 276-1]. Defendant Mark Glass, Commissioner of the Florida Department of Law Enforcement, responded in opposition [D.E. 279], and Plaintiffs replied [D.E. 282]. The Court has reviewed the Motion, the proposed pleading, the briefing, and the record.

Judge Williams's last Order of Dismissal already held that subsection (7)'s in-person reporting requirement survives rational-basis review. [D.E. 275 at 16]. The proposed complaint was filed on the heels of that Order purportedly to add history, evidence, and argument. But it does not change the question, and it does not change the answer. Because the proposed complaint would still be subject to dismissal, amendment would be futile, and the Motion is **DENIED**.[1]

## *I. BACKGROUND*

### *A. <u>The Reporting Requirement</u>*

Florida's sex offender registration statute requires a sexual offender "who intends to establish a permanent, temporary, or transient residence in another state or jurisdiction other than the State of Florida" to "report in person to the sheriff of the county of current residence at least 48 hours before the date he or she intends to leave this state." Fla. Stat. § 943.0435(7). Travel that is not known 48 hours in advance "must be reported in person to the sheriff's office as soon as possible before departure." *Ibid.* The sheriff forwards the information to the Department, which "shall notify the statewide law enforcement agency, or a comparable agency, in the intended state, jurisdiction, or country of residence." *Ibid.*

---

[1] This matter was referred for disposition by the Order entered October 17, 2018. A motion to amend is ordinarily a non-dispositive matter. *See, e.g., Smith v. Marcus & Millichap, Inc.*, 106 F.4th 1091, 1099 (11th Cir. 2024) (party waived timely objection to Magistrate Judge Order denying motion to amend under Rule 72). But given the potential case-dispositive outcome that may result from this Order, the Court grants leave for any party who seeks to object under Local M.J. R. 4 to the Order to obtain de novo review of the Order. If any objection is timely raised, the Court can treat the Order as a Report and Recommendation under Rule 4(b).

Because the statute borrows the sexual predator statute's definitions, a "temporary residence" includes any place a registrant stays for three or more days in the aggregate during a calendar year, including vacation, business, or personal travel. *Id.* § 943.0435(1)(f); *id.* § 775.21(2)(n). A weekend trip out of state can therefore trigger the in-person report.

In-state travel is treated differently. Since October 1, 2025, a registrant must report an in-state travel residence within 48 hours after establishing it, and "[t]he report shall be made through the department's online system" or in person at one of several designated offices. *Id.* § 943.0435(4)(a)2. The statute also permits online reporting of other categories of information, such as vehicles, electronic mail addresses, and internet identifiers. *See id.* § 943.0435(4). Registrants must still re-register in person two or four times each year, depending on the offense of conviction. [D.E. 276-1 ¶ 17] (citing Fla. Stat. § 943.0435(14)).

### ***B. <u>Harper v. Glass</u>***

While this case was stayed at Plaintiffs' request [D.E. 229, 232], Plaintiffs' counsel tried a parallel challenge to judgment in the Northern District of Florida. *Harper v. Glass*, No. 4:21-cv-85-RH-MJF, ECF No. 129 (N.D. Fla. Mar. 25, 2024) [D.E. 279-1]. Judge Hinkle struck the requirement that a registrant report in-state travel in person to the Department of Highway Safety and Motor Vehicles, and he held that the statute, as then written, did not require the remaining report to the sheriff to be made in person. *Id.* at 17–18, 25–26. His "controlling consideration" was textual: "the

governing statute simply does not require in-person reporting of in-state travel to the sheriff's office." *Id.* at 18.

Judge Hinkle rejected the challenge to subsection (7). Out-of-state travel, like travel under Alabama's statute, is reported in person in advance, after which the registrant "is free to travel without further reporting," and "[t]he system is workable." *Id.* at 21. The judgment declared subsection (7) constitutional "on [its] face and as applied to the plaintiff." *Id.* at 25. No party appealed. The Legislature then amended subsection (4)(a) to provide the online option for in-state travel described above.

### *C. __This Litigation__*

Plaintiffs filed this action in 2018 and have amended their complaint three times. [D.E. 1, 50, 102, 248]. The latest one adjudicated, the Third Amended Complaint, asserted two claims: a procedural due process claim premised on strict liability (Count I), and an as-applied substantive due process claim directed at §§ 943.0435(4)(a), (7), and (9)(d) (Count II). [D.E. 248]. On motion to dismiss, the Court granted the Commissioner's motion to dismiss. [D.E. 275]. Count I was dismissed with prejudice and Count II without prejudice. *Id.* at 18.

On Count II, the Court addressed each of Plaintiffs' five theories under rational-basis review. *Id.* at 11–18. Two rulings bear on the present motion. First, Plaintiffs had argued for the first time in their response to that motion that requiring in-person reporting of out-of-state travel is irrational now that in-state travel may be reported online. The Court found that reframing improper, but it "also f[ound] that in-person reporting of out-of-state travel does not violate substantive due process."

*Id.* at 16. Second, on Plaintiffs' theory that the statute rests on false assumptions about risk, the Court found that Plaintiffs had "not advanced sufficient factual assertions to allow the Court to consider Plaintiffs' empirical data and the statute's constitutionality as applied to Plaintiffs," *id.* at 17, and had "not negated every conceivable basis that might support the challenged reporting requirements," *id.* at 18. The Count was thus dismissed without prejudice.

### *D. The Proposed Fourth Amended Complaint*

Two weeks later, Plaintiffs filed this Motion to address the Court's concerns. The proposed Fourth Amended Complaint abandons Count I and the challenges to subsections (4)(a) and (9)(d). It pleads a single substantive due process claim against subsection (7)'s in-person requirement. [D.E. 276-1 ¶¶ 40–56]. Its allegations fall into five groups.

*First*, Plaintiffs allege that the Department opposed the 2018 amendment that reduced the temporary-residence threshold to three days and, for years afterward, urged the Legislature to permit online reporting of both in-state and out-of-state temporary residences as a means of reducing the burden on sheriffs' offices and speeding public notification. *Id.* ¶¶ 3–4, 19–23. No criminal justice stakeholder opposed the proposal, *id.* ¶ 22, no legislator articulated a reason for rejecting it, *id.* ¶ 49, and the Legislature "repeatedly rejected it," *id.* ¶ 4.

*Second*, Plaintiffs allege, through expert reports and published studies, that registrants' recidivism rates are low and decline with time offense-free in the community; that individual risk can be measured with actuarial instruments such as

the Static-99R; and that registration and notification regimes do not reduce recidivism and may increase it. *Id.* ¶¶ 6, 24–30.

*Third*, Plaintiffs allege facts about themselves. John Doe 1's qualifying offense was committed against his sister in 1989–1990, when both were minors; he has committed no offense since; and a forensic evaluation places his risk of sexual reoffense below 0.35%. *Id.* ¶¶ 12, 31–34. John Doe 6 was convicted of the 1996 "attempted kidnapping of a 16-year-old with sexual intent"; he has significant intellectual disabilities; and a forensic evaluation places him at "one of the lowest possible risks." *Id.* ¶¶ 13, 35–39. Plaintiffs also describe the burden of in-person reporting, including an April 2026 business trip that John Doe 1 shortened rather than make an in-person report. *Id.* ¶¶ 18, 22, 33.

*Fourth*, Plaintiffs allege that registrants are a despised and politically powerless group and that the in-person requirement is the product of animus. *Id.* ¶¶ 42–47, 55.

*Fifth*, Plaintiffs seek to distinguish *McGuire v. Marshall*, 50 F.4th 986 (11th Cir. 2022), and ask the Court to declare subsection (7) unconstitutional and, alternatively, unconstitutional as applied to them. *Id.* ¶ 54; *id.* at 29.

## *II. GOVERNING PRINCIPLES*

A court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The rule is liberal, but it is not unlimited:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

> opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave therefore "may appropriately be denied '(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile.'" *In re Engle Cases*, 767 F.3d 1082, 1108–09 (11th Cir. 2014) (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)).

Denial "is justified by futility when the 'complaint as amended is still subject to dismissal.'" *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (quoting *Halliburton & Assoc., Inc. v. Henderson, Few & Co.,* 774 F.2d 441, 444 (11th Cir. 1985)); *see also Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). Futility is a legal determination. *See Smith v. Marcus & Millichap, Inc.*, 106 F.4th 1091, 1097 (11th Cir. 2024).

Because the Court dismissed the complaint rather than the action, Plaintiffs' right to amend as a matter of course ended, but they "may still move the court for leave to amend, and such amendments should be granted liberally." *Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers*, 724 F.2d 1552, 1556 (11th Cir. 1984). The Motion is therefore governed by Rule 15(a)(2). And because the denial of leave to amend is a non-dispositive matter, even when it rests on futility, the undersigned may resolve the Motion by order. *O'Neal v. Am. Shaman Franchise Sys., Inc.*, 166 F.4th 1274, 1282 (11th Cir. 2026); *see* 28 U.S.C. § 636(b)(1)(A). But see footnote 1 *supra*.

## *III. ANALYSIS*

The Commissioner opposes the motion for leave to amend, arguing that the amendment would be futile, that Plaintiffs have unduly delayed and repeatedly failed to cure, that they acted in bad faith by relitigating *Harper*, and that he and the State of Florida would be prejudiced. [D.E. 279].

Plaintiffs insist, however, that they are responding to the Commissioner's own arguments on the earlier motion to dismiss that compelled the Court to grant dismissal without prejudice. They are, as demanded, now alleging more compelling reasons for finding the statute to be irrational; chiefly, Defendant's own years-long legislative campaign to amend the statute to allow for online reporting of both intra- and inter-state travel, as enhancing public safety by reducing the burden on law enforcement and expediting public notice. No other criminal justice stakeholders nor members of the public opposed this amendment. The Florida Legislature never rejected Defendant's reason for proposing it; it instead unreasonably failed to adopt it. Plaintiffs are thus alleging the facts found wanting in the Third Amended Complaint, which should form the basis of the litigation going forward.

As persuasive as these points may be in the abstract, the Court still agrees that amendment would be futile, which is enough to resolve the Motion. Undue delay supplies additional support. The Court does not rely on bad faith or prejudice.

### ***A. <u>The Nature of the Claim</u>***

Plaintiffs do not contend that subsection (7) burdens a fundamental right, and sex offenders "are not considered a suspect class." *Doe v. Moore*, 410 F.3d 1337, 1346

(11th Cir. 2005). The claim is therefore governed by rational-basis review, which is "highly deferential." *Id.* at 1345. Under that standard, the Eleventh Circuit will "hold legislative acts unconstitutional . . . in only the most exceptional circumstances." *Ibid* (citing *Williams v. Pryor,* 240 F.3d 944, 948 (11th Cir. 2001)). Applying it to this very statute, the court of appeals rejected a substantive due process challenge to the statute and held that Florida's Sex Offender Act as a whole "is rationally related to a legitimate government interest." *Id.* at 1345–46.

Four settled principles now govern this narrower inquiry focused on subsection (7). First, the challenger bears the burden "to negative every conceivable basis which might support" the law. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993); see, e.g., *Bivins v. Stein*, 759 F. App'x 777, 784 (11th Cir. 2018) ("there are plenty of rational bases to uphold Florida's rule"); *Leib v. Hillsborough Cnty. Pub. Transp. Com'n*, 558 F.3d 1301, 1306 (11th Cir. 2009) ("the burden is on the one attacking the law to negate every conceivable basis that might support it, even if that basis has no foundation in the record. . . . Under rational basis review, a court must accept a legislature's generalizations even when there is an imperfect fit between means and ends.") ("We agree with the district court that a multitude of rational bases might be adduced in support of the requirement.").

Second, because the legislature need not explain itself, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *FCC v. Beach,* 508 U.S. at 315; *see, e.g., Cash Inn of Dade, Inc. v. Metro Dade Cty*, 938 F.2d 1239, 1242 (11th Cir. 1991)

(conceivable reasons can thus be "drawn from a litigant's or judge's mind or from an accurate record of the proceedings."). It is "entirely permissible for the County to advance "rationales which may not have been contemplated at the time of passage." *Ibid.* (citation omitted). Legislation will survive rational basis scrutiny unless it is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the legislature's actions were irrational. *Gary v. City of Warner Robins, Ga.,* 311 F.3d 1334, 1339 (11th Cir. 2002) (citations omitted).

Third, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach,* 508 U.S. at 315. A conceivable basis suffices "whether or not the basis has a foundation in the record." *Heller v. Doe*, 509 U.S. 312, 320–21 (1993).

And, fourth, "courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Id.* at 321; *see, e.g., Leib.,* 558 F.3d at 1306.

These principles make futility a question of law. The Court accepts the proposed complaint's factual allegations as true. The question is whether, on those facts, a rational legislature could have still required an in-person report before a registrant leaves the State. Given the standard of review we must apply, it most definitely could.

### B. ***The Legislature Could Rationally Draw a Line at a State Border***

Plaintiffs' central theory is comparative. Florida now allows registrants to report in-state travel, vehicles, and other information online. Requiring an in-person

report for out-of-state travel alone, they argue, is arbitrary. [D.E. 276-1 ¶¶ 17–18, 51].

The argument fails at the threshold. In rational-basis review, "the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Beach*, 508 U.S. at 316 (quoting *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955)). A legislature that relaxes the reporting method for in-state travel while retaining it at the State's border has taken exactly such a step. The proposed complaint confirms that the choice was deliberate. By Plaintiffs' own account, the Legislature had the Department's proposal for online reporting of both kinds of travel before it for years, "repeatedly rejected it," and ultimately extended online reporting to in-state travel only. [D.E. 276-1 ¶¶ 4, 17, 21]. That is not an oversight. It is a line drawn with full knowledge of the alternative, especially given the litigation that has followed the statute's adoption. Perhaps in the future, the Legislature will go further (and listen to its law enforcement constituents who are not as wed to in person reporting as a majority of the body's members). But the decision to go no further now is not evidence of irrational action; it instead is commensurate with the Legislature "select[ing] one phase of one field and apply a remedy there, neglecting the others." *Williamson,* 348 U.S. at 489.

Nor is it difficult to conceive of reasons for that line. They appear on the face of the statute.

To begin with, the report begins an interstate handoff. Subsection (7) is the mechanism by which Florida tells other jurisdictions that a registrant is coming. The

sheriff transmits the report to the Department, and the Department notifies the law enforcement agency of the destination jurisdiction. Fla. Stat. § 943.0435(7). In-state travel requires no such handoff; the registrant never leaves Florida's registry. A legislature could rationally decide that information which will be sent to another sovereign should be given in person, to a law enforcement officer who can confirm the registrant's identity and clarify the itinerary before it is transmitted. The Eleventh Circuit has accepted these purposes for an in-advance travel report. Requiring registrants to report travel "[e]ncourages personal contact with law enforcement" and "[p]rovides for continuity of contact between jurisdictions," and "[i]n requiring registrants to disclose their travel plans to law enforcement shortly before traveling, the provision serves these rational purposes." *McGuire*, 50 F.4th at 1021.

That leads to a departure that ends Florida's practical reach. Once a registrant crosses the State line, Florida officials cannot verify his whereabouts until he returns. A legislature could reasonably conclude that the last opportunity for direct contact before that happens should be used. In-state travel involves no comparable loss of supervision. That same distinction answers Plaintiffs' point that registrants may report information about jobs, schools, and volunteer positions online, [D.E. 276-1 ¶¶ 22, 51], which are well and good. But those locations are located in Florida. This statute is addressing other concerns.

Advance reporting also makes another difference. The report is made once, and in advance. This is the feature that distinguished subsection (7) from the after-the-fact, in-state requirement Judge Hinkle invalidated. *Harper*, ECF No. 129 at 21, 24.

It is also the feature that led the Eleventh Circuit to conclude that a requirement "to report in person to law enforcement only once before a trip" did not impose an affirmative disability or restraint. *McGuire*, 50 F.4th at 1021.

Each of these reasons might be debated as a matter of policy. None needs to be proven. They need only be conceivable, *Beach*, 508 U.S. at 315, and they are. The Plaintiffs' proposed factual allegations thus do not undermine these legislative prerogatives. So rational basis review does not let us go further.

Plaintiffs' efforts to distinguish *McGuire* do not alter this conclusion. [D.E. 276-1 ¶ 54]. It is true that *McGuire* was an ex post facto case, but the factor at issue—whether the requirement has a rational connection to a nonpunitive purpose—asks substantially the question presented here. To be sure, Alabama required a fuller itinerary and offered no online reporting. But those differences go to the wisdom of each State's policy, not to whether Florida's is rational. And Plaintiffs' premise that *McGuire* relied on purposes "the Alabama Legislature cited in enacting the restriction," *ibid.*, is quite mistaken. The court identified those purposes from the Alabama Attorney General's *appellate brief*. *McGuire*, 50 F.4th at 1021 ("The Attorney General argues that requiring a registrant to report travel outside the county '[e]ncourages personal contact with law enforcement' and '[p]rovides for continuity of contact between jurisdictions.'"). That is consistent with *Beach*, which requires no legislative articulation at all. In sum, Plaintiffs' understandable efforts to minimize *McGuire* are not persuasive here.

### *C. The Department's Advocacy and Legislative Silence Do Not Make the Statute Irrational*

The proposed complaint's principal new allegations concern the Department's own views. The Department, Plaintiffs allege, believes that online reporting of out-of-state travel would better protect the public by speeding notification and freeing officers for other work, and no stakeholder has disagreed. [D.E. 276-1 ¶¶ 21–23, 47–48]. "It is difficult to conceive of any reason," Plaintiffs conclude, "why he would be wrong." [*Id.* ¶ 23].

Accepting every one of those allegations as true, the claim still fails. Rational-basis review asks whether the Legislature's choice is rational, not whether the agency that administers the statute would have chosen differently. An executive agency's view that a different law would be better policy does not render the existing law irrational. If it did, every agency legislative proposal would carry with it a constitutional challenge to the statute it sought to change.

Nor does it matter that no legislator explained the decision to retain in-person reporting. [D.E. 276-1 ¶ 49]. A legislature need never articulate its reasons, and whether a conceivable reason "actually motivated the legislature" is "entirely irrelevant." *Beach*, 508 U.S. at 315. The proposed complaint's remaining allegations on this score—that "it is impossible to imagine" how in-person reporting could serve the statute's purposes, [D.E. 276-1 ¶¶ 50, 53]—are simply legal conclusions that the Court need not accept, and they are answered by the reasons identified above.

The Court has also taken into account Judge Hinkle's observation that "[a]bsent a legislative endorsement of any reason for an in-person report, the

substantial burden of reporting in that manner does not survive rational-basis scrutiny." *Harper*, ECF No. 129 at 25; *see also id.* at 20. That observation does not help Plaintiffs. It was made about subsection (4)(a), which, as Judge Hinkle construed it, did not require an in-person report at all; the absence of a statutory command was the "controlling consideration." *Id.* at 18. Subsection (7), by contrast, requires a report "in person" in so many words, and *Harper* upheld it. *Id.* at 21, 24–25. And to the extent the observation could be read to *require* a legislature to endorse a reason for its choice, it cannot be squared with *Beach* or the Eleventh Circuit's many cases applying that standard in search for an "exceptional" case. *See, e.g., Corbitt v. Sec'y of the Alabama Law Enf't Agency*, 115 F.4th 1335, 1354 (11th Cir. 2024) (Pryor, J., concurring) ("Under rational basis review, if federal judges reviewing the policy can come up with a reason, any reason, why the State's adoption of the policy might not be completely irrational, the policy order must be upheld.").

Plaintiffs' reliance on federal law fares no better. That the federal Sex Offender Registration and Notification Act does not require in-person reporting of three-day stays, or notification to other States of temporary lodging, [D.E. 276-1 ¶¶ 22, 52], shows only that Florida has chosen to do more than federal law requires. A State does not act irrationally by exceeding a federal floor. *Cf. Alvarez v. Sch. Bd. of Miami-Dade Cnty.*, No. 20-12448, 2021 WL 2935366, at *2 (11th Cir. July 13, 2021) ("this Court has been clear that when considering whether a state or local government's actions lack rational basis, there is no consideration of whether that action violates state law. *Corn v. City of Lauderdale Lakes,* 997 F.2d 1369, 1389 (11th Cir. 1993) ("The fact that

town officials are motivated by parochial views of local interests . . . which may contravene state subdivision laws does not state a claim of denial of substantive due process.”). . . . The only question is whether the action is supported by a rational basis.”).

### *D. The Empirical and Individual-Risk Allegations Cannot Carry an As-Applied Claim*

The proposed complaint’s second major addition is evidence: expert reports on recidivism and the efficacy of registries, and forensic evaluations finding each Plaintiff’s risk of reoffense negligible. [D.E. 276-1 ¶¶ 24–39]. Plaintiffs reasonably read the Court’s prior Order as inviting them to supply this material, and they have done so in detail. But the material answers a question that rational-basis review does not ask.

The general studies invite the Court to weigh the empirical premises of Florida’s registration scheme. That is precisely the “courtroom fact-finding” to which a legislative choice “is not subject.” *Beach*, 508 U.S. at 315. The Legislature may act on “rational speculation unsupported by evidence or empirical data,” *ibid.*, and a challenger does not negate a conceivable basis by marshaling studies that dispute it. *See, e.g., Corbitt,* 115 F.4th at 1348 (rejecting rational basis challenge to state policy on changes to sexual designations on driver’s licenses) (rational basis review only asks if “the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. . . . Such a relationship may merely ‘be based on

rational speculation' and need not be supported 'by evidence or empirical data.' ") (quoting *Nordlinger v. Hahn,* 505 U.S. 1 11 (1992) and *Eknes-Tucker v. Governor of Ala.,* 80 F.4th 1205, 1225 (11th Cir. 2023)).

The individual evaluations fare no better. The obligation imposed by subsection (7) follows from a registrant's status as a sexual offender, which follows from the offense of conviction. Where a registration requirement turns "on an offender's conviction alone," proof that the offender "is not currently dangerous" is "of no consequence." *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003).

Plaintiffs answer that *Connecticut Department of Public Safety* decided only a procedural due process claim and expressly reserved the substantive question. True enough. *See id.,* 538 U.S. at 8, 9. But the Eleventh Circuit has since applied the same reasoning to substantive due process. In *United States v. Ambert,* the court held that a registrant's showing "that he is neither dangerous nor likely to be a repeat offender, is of no moment," because the reporting requirements "turn on the offender's conviction alone," and it observed that it had "definitively rejected a substantive due process claim reviewing an analogous Florida statute in *Doe v. Moore*, 410 F.3d 1337 (11th Cir. 2005)." 561 F.3d 1202, 1208 (11th Cir. 2009).

Along those same lines, in *United States v. Santiago,* the court rejected an expressly as-applied substantive due process challenge to a registration requirement, reasoning that whether the registrant was "dangerous [ ]or likely to be a repeat offender, is of no moment" because the requirements "turn on the . . . conviction alone." 589 F. App'x 509, 510 (11th Cir. 2015) (per curiam) (quoting *Ambert*, 561 F.3d

at 1208). Although *Santiago* is unpublished, it addresses the very claim Plaintiffs propose to plead, and the Court finds it persuasive.

Plaintiffs also contend that an as-applied challenge is a "far lighter lift" than a facial one. In one respect it is: it seeks relief for these Plaintiffs only. But the standard of review does not change. A claim that a conviction-based rule is irrational for registrants who pose little risk is, at bottom, a claim about the fit between the rule and its purpose. Rational-basis review tolerates "an imperfect fit between means and ends." *Heller,* 509 U.S. at 321.

This conclusion is consistent with the Court's prior Order. That Order rested on two independent grounds: that Plaintiffs had not alleged a sufficient factual predicate, and that they had "not negated every conceivable basis that might support the challenged reporting requirements." [D.E. 275 at 17–18]. The Order also reaffirmed that a legislative choice "may be based on rational speculation unsupported by evidence or empirical data." *Id.* at 12–13 (quoting *Beach*, 508 U.S. at 315); *see also id.* at 17. The new evidence addresses, at most, the first ground. It cannot address the second, because the conceivable bases for subsection (7) do not depend on any registrant's individual risk.

Moreover, the authorities Plaintiffs rely upon do not suggest otherwise. In *State v. Robinson*, the Florida Supreme Court held the sexual predator designation unconstitutional as applied to a defendant "whose crime indisputably did not contain a sexual element," and it emphasized that "[o]ur holding today is narrow." 873 So. 2d 1205, 1207, 1217 (Fla. 2004). It applied where "the State concedes that the crime

contained no sexual element and the circumstances of the crime conclusively belie any sexual motive." *Id.* at 1217. That is a very far cry from the record supporting this statute given the allegations of fact conceded in the complaint.

As Plaintiffs describe them, the out-of-state decisions they also cite likewise involved offenses lacking any sexual component or involved residency restrictions rather than reporting requirements. Yet neither Plaintiff falls within that category. John Doe 1's qualifying offense was a sexual offense against his sister, and John Doe 6's was, in Plaintiffs' own words, "attempted kidnapping of a 16-year-old with sexual intent." [D.E. 276-1 ¶¶ 12–13]. So, again, these cases do not help much here.

Finally, *Doe #6 v. Miami-Dade County*, 974 F.3d 1333 (11th Cir. 2020), on which Plaintiffs also rely, held only that an as-applied ex post facto theory could not be added under Rule 15(b) at the close of trial. But the parties there agreed that the question turned on that Rule. *Id.* at 1338–39, 1341. The decision does not recognize an as-applied substantive due process claim premised on individual risk.

### ***E. The Burden Allegations Do Not Alter the Analysis***

The most persuasive element of the proposed complaint describes real burdens on these plaintiffs that may appear to be unfair or unjust under the circumstances they allege. Many sheriffs' offices maintain a single reporting location with limited hours. [D.E. 276-1 ¶ 18]. Family emergencies and hurricane evacuations may arise without 48 hours' notice. [*Id.* ¶¶ 18, 22]. And John Doe 1 needlessly had to shorten an April 2026 business trip rather than risk violating the statute. [*Id.* ¶ 33]. The

Court does not discount these hardships, which we assume to be true for purposes of this motion.

But rational-basis review does not balance burdens against benefits. Absent a fundamental right, the question is whether the requirement is rationally related to a legitimate interest, not whether its costs are justified. The Eleventh Circuit has already held that Florida's travel-reporting requirement "does not unreasonably burden the Appellants' right to travel." *Moore*, 410 F.3d at 1349. And the statute itself accommodates short-notice travel: a trip not known 48 hours in advance may be reported "as soon as possible before departure." Fla. Stat. § 943.0435(7). Whether the remaining burden is worth bearing is a question for the Legislature. *See, e.g., Corbitt,* 115 F.4th at 1349–50 ("We are not here to second-guess the State's line-drawing, evaluate the efficacy of the State's Policy, or rewrite the Policy based on our own sense of fairness. . . . We leave those tasks to the political branches and hold that [the state policy] satisfies the 'low bar' of rational basis review.").

To support their contrary argument, Plaintiffs point to the fact registrants are "likely the most despised group of people in the country," and that the presumption of constitutionality is weaker for laws burdening such groups. [D.E. 276-1 ¶¶ 42–46]. They rely on equal protection decisions invalidating laws found to rest on animus. [*Id.* ¶ 44 (citing *Romer v. Evans*, 517 U.S. 620 (1996); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973); and other cases)].

These decisions do not save the claim. For starters, the proposed complaint pleads no equal protection claim; its sole count arises under the Due Process Clause. More fundamentally, the cited decisions turned on laws whose terms could not be explained by any legitimate purpose. Take *Romer*, where the Supreme Court found the amendment's "sheer breadth [was] so discontinuous with the reasons offered for it that the amendment seem[ed] inexplicable by anything but animus toward the class it affect[ed]." 517 U.S. at 632. Similarly, in *Moreno*, the Court held that "a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." 413 U.S. at 534. And in *Cleburne*, the permit requirement "appear[ed] . . . to rest on an irrational prejudice." 473 U.S. at 450.

Subsection (7) is not such a law. It is a reporting requirement, applicable to every sexual offender who leaves the State, that is defensible by the legitimate purposes identified above. Plaintiffs' own allegations undercut any inference of animus: the Legislature relaxed the reporting method for in-state travel, [D.E. 276-1 ¶ 17], and the agency responsible for enforcing the statute advocated relaxing it further, [*id.* ¶ 21]. The public hostility toward registrants that the proposed complaint describes (and on which, Plaintiffs note, this Court relied in permitting them to proceed anonymously, [*id.* ¶ 42 (citing [D.E. 25 at 11–12])]—is private hostility. It is not evidence of the Legislature's pernicious motive in requiring an in-person report.

Further evidence for this is also found in the statute itself. Section 943.0435(11) provides for a means through which some sexual offenders may seek to get out from the registration requirements, either by pardon proceedings or the 25-

year petition in subsection 11(a) for certain individuals and certain convictions. Section 943.04354 also outlines a process for removal of registration requirements for people like John Doe #1 who have convictions stemming from conduct that took place by a minor. "A person shall be considered for removal of the requirement to register as a sexual offender or sexual predator only if the person . . . (c) Is not more than 4 years older than the victim of this violation who was 13 years of age or older but younger than 18 years of age at the time the person committed this violation." Narrow as these provisions may be, they textually evidence a balancing of very relevant factors by the Legislature in promoting public safety requirements like registration versus the onerous burdens they may have on people who have demonstrated their compliance with the law and should not be scarred for life for immature mistakes.

Again, whether these provisions can apply to these particular plaintiffs is not the issue; the only question here is whether this statute warrants traditional rational basis review. Plaintiffs' arguments to the contrary are simply not persuasive, even assuming their allegations are true and the unfair burdens they suffer are real.

Indeed, consistent with these principles, the Eleventh Circuit has held that sex offenders are not a suspect class, *Moore*, 410 F.3d at 1346, and has applied ordinary rational-basis review to a policy excluding registered sex offenders from a public benefit, notwithstanding an allegation that the policy was "enacted out of animus." *Houston v. Williams*, 547 F.3d 1357, 1363–64 (11th Cir. 2008). We cannot take a hard tack now and find that rational basis review for these individuals should be heightened.

Plaintiffs' reliance on *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), [D.E. 276-1 ¶¶ 41, 45], does not change the standard either. *Lewis* addressed executive action and explained that the "criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." 523 U.S. at 846. For legislation that does not burden a fundamental right, the governing criterion is rational basis. *See, e.g., City of Cleburne,* 473 U.S. at 440 ("When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.") (internal citation omitted).

### *F. Any Facial Challenge Fails*

Although the proposed claim is captioned as an as-applied challenge, the proposed complaint also alleges that subsection (7) is "irrational on its face," and its prayer for relief asks the Court to declare the provision unconstitutional without qualification. [D.E. 276-1 ¶ 8; *id.* at 29]. To the extent the proposed complaint asserts a facial claim, it squarely fails for the reasons already given. A facial challenger "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Plaintiffs, who cannot show that subsection (7) is irrational as applied to them, necessarily cannot show that it is irrational in every application.

### *G. Undue Delay and Repeated Opportunities to Cure*

Futility is sufficient to deny the Motion. The history of this case provides additional support.

"Although generally, the mere passage of time, without more, is an insufficient reason to deny leave to amend a complaint, undue delay may clearly support such a denial." *Engle*, 767 F.3d at 1109 (quoting *Hester v. Int'l Union of Operating Eng'rs*, 941 F.2d 1574, 1578–79 (11th Cir. 1991)). Here there is more than the passage of time. This action was filed in 2018, and the proposed pleading would be Plaintiffs' fifth complaint. The comparison between online and in-person travel reporting was litigated in *Harper*, where the court discussed the Department's requests that the Legislature authorize online reporting and rejected the challenge to subsection (7). *Harper*, ECF No. 129 at 17–18, 21.

Plaintiffs indeed acknowledge that they learned of the Department's legislative campaign during the *Harper* discovery and "could therefore have raised this reason in the TAC," which they describe as "an oversight." [D.E. ___ (Reply) at 7 n.3]. They instead raised the comparative theory for the first time in response to the motion to dismiss. [D.E. 275 at 15–16].

"Rule 15's liberal amendment standard is not an unqualified license to fix every new defect as the court uncovers them." *Engle*, 767 F.3d at 1123. What matters is "whether the plaintiff had fair notice of the defects and a meaningful chance to fix them." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018). As to the comparative theory, Plaintiffs had both.

The Court recognizes that the 2025 amendment authorizing online reporting of in-state travel took effect after the Third Amended Complaint was filed, that the prior Order was the first ruling on the sufficiency of Plaintiffs' rational-basis allegations, and that Plaintiffs moved promptly after it issued. For those reasons, the Court would not deny leave on the basis of delay alone. It notes the history only because it confirms that the Rule's liberality has been extended to Plaintiffs many times already.

### *H. <u>Bad Faith and Prejudice</u>*

The Commissioner also contends that Plaintiffs committed to treat *Harper* as a test case and that he would be prejudiced by defending the same claim again. [D.E. 279 at 2, 5, 7]. The Court does not rest its decision on either ground. Plaintiffs' stay motion said that *Harper* "may" clarify or resolve the issues here; that is not an agreement to be bound, and the Commissioner does not argue that *Harper* has preclusive effect. Nor has he identified prejudice beyond the cost of continued litigation. *Cf. Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1000 (11th Cir. 2021) (finding no undue prejudice where the opposing party "could not articulate . . . what it would have done differently"). We thus do not rest our decision on bad faith or prejudice.

## *IV. CONCLUSION*

The Legislature has required registrants to report in person before they leave the State, and it has declined, with full knowledge of the alternative, to extend online reporting to that report. The Court has held that choice rational, and the proposed

complaint gives no reason to revisit that holding. The Department's preference for online reporting is not the Legislature's judgment. The proffered expert evidence cited in the complaint asks the Court to find legislative facts, which rational-basis review does not permit. And Plaintiffs' individual risk is immaterial to a requirement that turns on the offense of conviction. The proposed Fourth Amended Complaint is therefore still subject to dismissal and, consequently, is futile under Rule 15.

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion to Amend Third Amended Complaint [D.E. 276] is **DENIED**. Any further disposition of this action is reserved to the District Judge.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of November, 2026.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge